## THE STATE v. ANDERSON, Appellant.

**Division Two, January 31, 1905.**

1. **PLEA IN BAR: Demurrer.**  A demurrer to a plea in bar admits the truth of the allegations embraced in the plea.

2. ————: **Essentials To Good Plea.**  Where one offense is a necessary element in, and constitutes an essential part of, another offense and both are in fact but one transaction, a conviction or acquittal of one is a bar to a prosecution for the other.

3. ————: ————: **Larceny: Obtaining Money By False Pretenses: Distinct Offenses.**  The offense of larceny of money is not a necessary element in, nor does it constitute an essential part of, the offense of obtaining the same money by false pretenses. The two offenses are separate and distinct.  And an acquittal of the one is not a bar to a prosecution for the other.

4. **LARCENY AND FALSE PRETENSES: Distinction.** Where property is delivered with the intention of parting with it altogether, that is, by giving the title as well as the possession, the offense is that of false pretenses; but where the owner is induced to deliver possession only, with a preconceived design on the part of the taker to convert it to his own use when obtained, it will be implied that the taking is against the will of the owner, and in such case the offense is larceny.

5. ————: **Broker: Employment: Deposit of Money.** The prosecuting witness testified that, in answer to a newspaper advertisement, he went to the office of defendant, who conducted a brokerage business; that defendant stated that the profits of the business were from $200 to $300 per month, that he needed an assistant, and offered to sell witness a one-half interest for $200; witness replied that he preferred to have a salary; defendant then said that witness could put up $50 for thirty days, and if at the end of that time he was satisfied, he could pay the rest. The witness then deposited the $50 with the defendant, but testified that he had never received the money back, that he had never asked defendant for it, and had never again seen him. *Held,* that the prosecuting witness did not, nor did he intend to, part absolutely with the ownership of the money, but that it was simply a deposit of that amount of money, pending negotiations for the sale of an interest in the business. Therefore, if defendant was guilty of any offense, it was that of larceny, and having been previously acquitted of the charge of larceny of the same money, the court should have instructed the jury to return a verdict of not guilty.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel G. Taylor,* Judge.

REVERSED.

*John T. Murphy, Campbell Cummings* and *Thomas P. Bashaw* for appellant.

(1) Defendant's plea in bar was sufficient, and the State's demurrer admits the existence of the record of defendant's former acquittal. State v. Williams, 152 Mo. 120; State v. Moore, 156 Mo. 135. The rule or test laid down by this court is: When one offense is a necessary element in, and constitutes an essential part of, another offense, and both are, in fact,

but one transaction, a conviction or acquittal of one is a bar to a prosecution for the other.  State v. Williams, 152 Mo. 121; State v. Huffman, 136 Mo. 62; State v. Snyder, 98 Mo. 555; State v. Headrick, 179 Mo. 300.  In the following cases larceny was held to be a bar to false pretenses: Reg. v. Bulwer, Leigh & C. 476; 9 Cox C. C. 492; 33 L. J. M. C. 171; 10 Jur. (N. S.) 684; 10 L. T. (N. S.) 580; Reg. v. Ewing, 21 N. C. Q. B. 533; 2 Roscoe's Cr. Ev., 684; Com. v. Moore, 99 Pa. St. 575; Reg. v. Robinson, 9 L. C. Rep. 283; Woodruff v. State, 61 Ark. 164; People v. Jeffery, 14 N. Y. Supp. 839; Dull v. Com., 25 Gratt. 981.  The trial court should have overruled the State's demurrer to defendant's plea in bar, and committed reversible error in not so doing.  A former trial and acquittal is a bar to another indictment where it appears that the second case is for the same transaction as the first, and it is immaterial that the offense is called by a different name.  11 Am. and Eng. Ency. of Law, 934; Moore v. State, 71 Ala. 307; Holt v. State, 38 Ga. 187; State v. Layton, 25 Iowa 193; Hirschfield v. State, 11 Tex. App. 207; People v. Krummer, 4 Parker 217. Where the same act constitutes several different crimes, a conviction or acquittal as to one bars a subsequent prosecution as to another.  11 Am. and Eng. Ency. of Law, 936; State v. Bruffey, 75 Mo. 389; State v. Colgate, 31 Kan. 511; Triplett v. Com., 84 Ky. 193; State v. DeGraffenreid, 9 Baxt. 287; Williams v. State, 24 Tex. App. 69; Turner v. State, 23 Tex. App. 512; State v. Brannon, 55 Mo. 63.  A former prosecution for an offense is a bar to a subsequent prosecution where it was for an offense which constitutes an essential element of the latter charge.  11 Am. and Eng. Ency. Law, 942; 1 Bish., Cr. Law, sec. 1060; Wright v. State, 17 Tex. App. 152; Crenshaw v. State, Mart. & Yerg. 122; Thomas v. State, 40 Tex. 36; Drake v. State, 60 Ala. 42; U. S. v. Lee, 4 Cranch 446; State v. Sims, 21 Tex. App. 649; State v. Shepard, 7 Com. 54; Dinkey

v. Com., 17 Pa. St. 126. (2) Defendant, if guilty of any crime, was guilty of larceny and not false pretense. 12 Am. and Eng. Ency. of Law (2 Ed.), 805; State v. Vickery, 19 Tex. 326; People v. Morse, 99 N. Y. 662; People v. Rae, 66 Cal. 423.

*Edward C. Crow,* Attorney-General, for the State.

FOX, J.—At the June term, 1903, of the circuit court of the city of St. Louis the defendant in this cause was indicted for obtaining money from Patrick J. Keane under false pretenses. At the December term, 1903, of said court, with the consent of the court, a *nolle prosequi* was entered in said cause, and the same was by the circuit attorney dismissed; and at the same term of court, for the commission of the same act, the circuit attorney filed an information against the defendant, charging him with grand larceny. To this information, defendant entered his plea of not guilty. Upon the trial of the issue joined upon the information for larceny, defendant was acquitted and discharged. Subsequently, at the February term, 1904, of said court, for the commission of the same act, the circuit attorney filed his information, charging defendant with obtaining money from Patrick J. Keane under false pretenses.

To this information, the defendant filed his plea in bar, setting up a former trial and acquittal, as follows:

"Now this day comes the defendant in the above-entitled cause, and for a special plea in bar states to the court that at the June term, 1903, of this court, the grand jury of this court for said term duly summoned, empanelled, charged and sworn to inquire and true presentment make in and for the city of St. Louis, State of Missouri, returned into this court an indictment against this defendant in and under the name of James P. Anderson, with obtaining money under false

pretenses from one Patrick J. Keane, alleging said false pretenses as follows, to-wit: that on the 10th day of March, 1903, this defendant, James P. Anderson, did falsely and fraudulently and knowingly, with intent to cheat and defraud said Patrick J. Keane, pretend and represent to the said Patrick J. Keane that the said James P. Anderson was then and there the owner of the rooming-house department of the Atlas Brokerage Company, located at No. 612 Chestnut street, in the city of St. Louis and State of Missouri, and that said rooming-house department was doing a profitable business, and that said department was then and there paying from two hundred to three hundred dollars per month net profits, and that he would sell to said Patrick J. Keane a one-half interest in said rooming-house department for the sum of two hundred dollars, and that the said Patrick J. Keane, relying upon the false and fraudulent statements knowingly made as aforesaid, and believing them to be true, was induced to part with, and did part with, the sum of two hundred dollars in good and lawful money of the United States, and thereafter, at the December term, 1903, of this court, said cause coming on for trial upon the charge in said indictment made, and the defendant's plea of not guilty thereto, the circuit attorney of the city of St. Louis prosecuting on behalf of the State in this court, asked and obtained leave of this court to enter a *nolle prosequi* in said case and said case was thereupon by this court on motion of the State, so made by the said circuit attorney on behalf of the State, dismissed and said case ordered stricken from the docket, and thereupon on the same day and at the same time said circuit attorney filed an information in the said court against this defendant, James P. Anderson, charging him with the crime of grand larceny in feloniously taking, stealing and carrying away the aforesaid sum of two hundred dollars, heretofore mentioned, being the money of said Patrick J. Keane. Thereafter, said last-men-

tioned cause coming on for trial on the 20th day of January, 1904, at the said December term, 1903, of this court, both parties announcing themselves ready for trial, a jury of twelve good and lawful men was duly empanelled and sworn and charged with the deliverance of defendant, who after hearing the evidence adduced on the part of the State, returned a verdict acquitting defendant of said charge and this defendant, James P. Anderson, mentioned in said indictment and former information, and so informed against in this cause, is one and the same person and not another and different person and that the transactions, acts and dealings between this defendant and the said Patrick J. Keane, as set out in said indictment and said former information, and in the information in this case, are one and the same and not another and different acts, dealings and transactions, and all relate to and are the same, and are identical in every particular and respect. Wherefore, he claims that he has been put in jeopardy for the said offense in the said indictment and former information with which he stands charged in this information in this case, contrary to article 11, section 23, of the Constitution of Missouri; wherefore he prays judgment and that he be dismissed by the court in present information specified."

To this plea in bar, the following demurrer was filed:

"Comes now Joseph W. Folk, circuit attorney within and for the city of St. Louis, and, having read the plea in bar herein filed by the defendant, doth demur to said pleading in the nature of a plea in bar, and, as ground of demurrer, states:

"First. That the facts set forth in said pleading in the nature of a plea in bar fail to set forth facts sufficient to constitute a bar to a prosecution upon the information in this cause.

"Second. That said pleading avers that the former trial pleaded was had upon an entirely differ-

ent charge from the one laid down in the information herein.''

The court sustained the demurrer to the plea in bar, and defendant was put upon trial for the offense charged in the information filed at the February term, 1904, and was convicted of said offense, and his punishment fixed at two years in the penitentiary. From this judgment of conviction defendant in due time and form prosecuted his appeal.

''The testimony on the part of the State tends to show that on the tenth day of March, 1903, Patrick J. Keane, clerk with the Laclede Gas Company, and formerly a clerk and waiter at the St. Louis Club, the prosecuting witness, called at 612 Chestnut street, St. Louis, then the office of the Atlas Brokerage Company, in response to a newspaper advertisement and met there one W. A. Buck, the manager of the Atlas Brokerage Company, by whom he was referred to the defendant with the remark that said Keane was a young man with the best of references and to do what he could for him, and thereupon they retired together to the private office where they had the following conversation alone together, according to the testimony of Keane: That defendant asked him if he knew anything about brokerage business and Keane stated that he did not; that defendant told him he owned the rooming-house department of the Atlas Brokerage Company; that he wanted an assistant and that if Keane would give him $200 he would give him one-half of said business; that the profits therefrom amounted to $200 to $300 per month; that said Keane answered that he would rather have a salary and was told by defendant that he was foolish, whereupon Keane told defendant that he had but $200 and could not afford to lose that; that defendant then told him to deposit $50 with him for thirty days and that if he, Keane, was satisfied at the end of thirty days, to pay the remainder, but if he was dissatisfied defendant would give him back his

money, $50. Keane told defendant that he saw an advertisement in the paper; Keane gave defendant $50 and was given by defendant a receipt for it, and that was all that occurred between them on that day; but that the defendant told Keane to come back the following morning at nine o'clock to go to work, but that he did not see the defendant when he returned; that he stayed in the office until April 3, 1903, but did not again see defendant; but did not receive any profits from his supposed interest in the rooming-house business there from Anderson or any body else and never received the $50 back; that he never asked defendant for the return of the $50, never had seen him; asked Buck where Anderson was on the second day there; that he entered into another deal then on the second day; that Anderson explained the business, telling him how commissions were earned and business procured; that at the time he entered into the business he did not know what defendant had been making; that he gave the receipt received from Anderson for the $50 to Buck the next day; that he believed defendant's statement to the effect that he was making $200 to $300 per month.''

The testimony on the part of the defendant tended to show that defendant was of good reputation, and engaged in a legitimate business, having made purchases and sales of property for other parties. Defendant testified in his own behalf substantially as follows:

"That he was formerly an officer in the United States army and honorably discharged, and after trying other employment bought an interest in the Atlas Brokerage Company, including the rooming-house and grocery store departments, from W. A. Buck for $400, conditioned that Buck receive forty per cent of all gross profits for advertising, office expenses and other expenses connected with the business; received from Buck at the time fifty to sixty signed contracts author-

izing him to sell rooming-houses, restaurants, drug-
stores and barber shops, and agreeing to pay five per
cent commission.   Defendant later bought drugstore
and barber shop department for $150; in some con-
tracts customers agreed to pay stated sums instead of
commissions—$25, $50 and $75.   Defendant explained
to Keane that he was owner of rooming-house depart-
ment and desired to sell one-half interest in it be-
cause he wanted to get somebody to work with him to
make it pay more; showed him contracts which he had
for sale of property; explained the business to him and
stated that it had been established about two years; that
business some months had paid as high as $200, while
other months had paid nothing, depending altogether
on sales effected in that business; but that he thought
the World's Fair and persistent efforts would make
business pay them as high as $300 to $500 per month;
defendant asked $200 for one-half interest; that Keane
responded that he had never done anything of the sort
and only had $200, which amount he had with him at
the time; Keane asked for a salary of $15 per week.
Defendant refused to pay salary, because when clerks
became familiar with work they would go to some other
brokerage office, make the deal and collect commission.
Defendant did not tell him at that time business was
paying any certain amount.   Defendant showed him
contracts he had on hand, told him he could not pay a
salary, but that he, Keane, might make arrangements
with Buck whereby Buck might let him have a certain
sum per week on a guarantee.   Defendant gave Keane
a receipt, reading:  'Received of Patrick J. Keane $50
earnest money to be returned in thirty days.  Signed,
Atlas Brokerage Company, Per Anderson;' that he
never saw Keane afterward; Keane never asked de-
fendant for his money.  Defendant was in office often
after that while Keane was there.  Five houses were
sold, two restaurants and a saloon.  Defendant kept a

record while there, which remained in the safe at the time he left the Atlas Brokerage Company. Defendant, testifying from memory, stated that the commissions made were $102, $25 and $10; cannot remember the others. That the company had nicely furnished offices; paid $60 rent per month; that he made the same statement to Weaver and to Dr. Simon. That the company advertised extensively; that defendant stated that his reason for asking Keane $200 for one-half interest was because that was one-half of the amount he himself had paid for it; that defendant sold out all his remaining interest in the business to Buck on the afternoon of March 10th; that the defendant gave the $50 to Buck on the day he received it, and two days later received from Buck the receipt which he had given to Keane.''

This is a sufficient reference to the testimony upon which this cause was submitted to the jury, to enable us to determine the legal propositions involved. The court instructed the jury, the cause was submitted, and a verdict of guilty as charged returned, fixing the punishment, as before stated, at two years in the penitentiary.

## OPINION.

The first proposition in this cause with which we are confronted is the correctness of the action of the trial court in sustaining the demurrer to the plea in bar, filed by the defendant. This is the most vital question disclosed by the record in this cause. If the contention of appellant upon this proposition be maintained, it ends this case.

It is fundamental that the demurrer admits the truth of the allegations embraced in this plea in bar. It will be noted that this plea alleges that this defendant was first indicted for the commission of the act upon which he was finally convicted, for obtaining money

from the prosecuting witness, Patrick J. Keane, under false pretenses. This indictment was dismissed, and an information filed upon the same state of facts, charging the defendant with grand larceny. To this charge it is averred in the plea, and this averment must be taken as admitted by the demurrer, that defendant was put upon his trial before a jury, and they returned a verdict of not guilty.

It will be observed that the offense of grand larceny is treated of in section 1898, Revised Statutes 1899, and that of obtaining money under false pretenses is defined by section 1927. That these two offenses are separate and distinct, there can be no dispute. The elements constituting these offenses are different, and while it may be said that they are of a kindred nature, yet the offenses are clearly separate and distinct. In larceny there must be present the element of trespass, in obtaining money by false pretenses this element need not exist. [Loomis v. People, 67 N. Y. 322; 1 Hawk. Pl. Cr., 134; 2 Russ. on Crimes (5 Am. Ed.), 95; People v. McDonald, 43 N. Y. 61; Hildebrand v. People, 56 N. Y. 394; Smith v. People, 53 N. Y. 111.]

In other words, in larceny the essence of the offense is the taking and conversion of the property or money to the use of the taker against the consent of the owner, with the intent to deprive the owner of it. In obtaining money by false pretenses, the essence of the offense is in the fraudulent and false representations which result in securing the consent of the owner to part with the title as well as the possession of the property.

Defendant in this cause was acquitted of the offense of larceny, the charge of which offense was predicated upon the same transaction as the one upon which this prosecution is based. The rule is clearly and correctly stated upon the proposition now being considered in State v. Smith, 43 Vt. 324:

"When one offense is a necessary element in, and

constitutes an essential part of, another offense, and both are in fact but one transaction, a conviction or acquittal of one is a bar to the prosecution for the other." This announcement of the Vermont court met the approval of this court in State v. Huffman, 136 Mo. l. c. 62.

This leads us to the inquiry as to whether the offense of larceny is a necessary element in, and constitutes an essential part of, the offense of obtaining money by false pretenses, as charged in the information upon which this judgment of conviction is predicated.

We have reached the conclusion that it does not; as before stated, the offenses are separate and distinct, and the correctness of this conclusion is emphasized when we consider that the offense of obtaining money by false pretenses is not embraced in a charge of larceny for stealing the money. A party charged with grand larceny cannot be convicted, even though the testimony shows his guilt of obtaining money by false pretenses, for the reason that the essential elements of the two offenses are entirely different. The trial court did not have the facts before it as developed in the trial of this cause, at the time the plea in bar was interposed; nor was the testimony in the trial of the larceny case before the court; hence, as to such plea, it was called upon simply to pass upon the record before it, and we are of the opinion that the action of the court in sustaining the demurrer to the plea in bar, was correct. In other words, that ruling was simply that the offense of obtaining money by false pretenses was not embraced in a charge of grand larceny, and a trial and acquittal upon such charge of larceny, would not bar a prosecution for obtaining money by false pretenses.

If the defendant, under the testimony of the prosecuting witness, was guilty of any offense, it was that of grand larceny; hence, the error of the trial

court did not consist of its action in sustaining the demurrer to the plea in bar. But after the facts were developed, it being apparent that, if any offense had been committed, it was that of larceny, and that defendant had been acquitted of that offense, it was clearly the duty of the court to grant the request of the defendant for a peremptory instruction that the jury must find the defendant not guilty.

This leads us to note the well-recognized distinction between the offenses of larceny and obtaining money by false pretenses.

"In determining whether property has been obtained by false pretenses or by larceny, the distinction to be observed is: Where the property is delivered with the intention of parting with it altogether, that is, by giving the title as well as the possession, the offense is that of false pretenses; but where the owner is induced to deliver possession only, with a preconceived design on the part of the taker to convert it to his own use when obtained, it will be implied that the taking is against the will of the owner, and in such case the offense is larceny." [12 Am. and Eng. Ency. Law (2 Ed.), 805.]

The distinction is very aptly and clearly drawn by the Supreme Court of Texas in State v. Vickery, 19 Tex. 326. In that case, as in the one at bar, the defendant was charged with obtaining property by false pretenses. It was there said:

"In order to constitute the offense of obtaining money, goods, etc., under false pretenses, it is essential that the owner should have intended to part with the right of property; and it is this which distinguishes this offense from the crime of larceny, in cases of a constructive taking, where one, with a felonious intent to convert the goods to his own use, obtains possession of them by some trick or artifice, by which he acquires the possession only, but which has not the effect of transferring any right of property in the goods from

the owner to the party thus obtaining the possession. If there is clearly no change of property, nor of legal possession, but the legal possession remains exclusively in the owner, it will be larceny; but if a right of property passes, the offense is not larceny, but the obtaining of goods under false pretenses. This distinction is clearly stated by Mr. Archbold in his treatise on Criminal Procedure, and illustrated by numerous cases in the text and notes to the sixth edition, under the title 'Larceny.' [2 Arch. Cr. Pl., 372.] In treating of the offense of obtaining money, etc., under false pretenses, he says: 'In order to convict a man of obtaining money or goods under false pretenses, it must be proved that they were obtained under such circumstances that the prosecutor meant to part with his right of property in the thing obtained, and not merely with the possession of it; if the prosecutor part with the possession only, and not the right of property, we have seen that the offense is larceny, and not an obtaining of money under false pretenses.' "

In Loomis v. People, 67 N. Y. 1. c. 327, this proposition is thus treated:

"While the element of trespass is wanting and the offense is not larceny, where consent is given, and the owner intended to part with his property absolutely, and not merely with a temporary possession of the same, even although such consent was procured by fraud, and the person obtaining it had an *animus furandi*, yet as is well said by a writer upon criminal law: 'It is different where, with the *animus furandi*, a person obtains consent to his temporary possession of property, and then converts it to his own use. The act goes farther than the consent, and may be fairly said to be against it. Consent to deliver the temporary possession is not consent to deliver the property in a thing, and if a person, *animus furandi*, avail himself of a temporary possession for a specific purpose, obtained by consent to convert the property in the thing

to himself and defraud the owner thereof, he certainly has not the consent of the owner. He is, therefore, acting against the will of the owner, and is a trespasser, because a trespass upon the property of another is only doing some act upon that property against the will of the owner.' "

In the same case, continuing to discuss the proposition, it was said by the court:

"There is, to be sure, a narrow margin between a case of larceny and one where the property has been obtained by false pretenses. The distinction is a very nice one, but still very important. The character of the crime depends upon the intention of the parties, and that intention determines the nature of the offense. In the former case, where by fraud, conspiracy or artifice, the possession is obtained with a felonious design, and the title still remains in the owner, larceny is established. While in the latter, where title, as well as possession, is absolutely parted with, the crime is false pretenses." To the same effect is People v. Morse, 99 N. Y. 662.

We have thus stated the rule, and it is well to apply it to the facts as detailed by the prosecuting witness. Whatever the offense committed by the defenndant, it is embraced in this part of the testimony of such witness in which he states, in answer to questions, as follows:

"Q. You say you went into that office with Anderson? A. Yes, sir.

"Q. Any one else there with you while you spoke to him? A. No, sir.

"Q. State to the jury in your own way what conversation and dealings you had with Anderson, the defendant, in that private room, the tenth of March of last year. A. Mr. Anderson asked me if I knew anything about the brokerage business; I told him I did not. He told me that he owned this department, the rooming-house department of the Atlas Brokerage

Company; that he needed an assistant; if I would give him $200, he would give me half of the business; the profits amounted to $200 to $300 a month.

"Q. Go ahead and state what else occurred, what else was said and done then? A. I told him I would rather have a salary if I could, working on a salary. He said that I was foolish.

"Q. Who said that you were foolish? A. Anderson. I told him then I didn't have but $200; I couldn't afford to lose that. He told me then to deposit $50 with him for thirty days; if I was satisfied at the end of thirty days, to pay the rest; if I was dissatisfied he would give me back my money, my $50.

"Q. Did you say anything to him as to having seen the advertisement in the paper; that was why you came there? A. Yes, sir; I told him.

"Q. Told him about that? A. I saw the ad. in the paper.

"Q. You say that he told you that he was the owner of the rooming-house department of the Atlas Brokerage Company? A. Yes, sir.

"Q. How much did he say the profits were? A. Between $200 and $300 a month.

"Q. I think you said that he told you he needed an assistant? A. Yes, sir.

"Q. How much did he want for the one-half? A. Half the profits.

"Q. How much did he want you to give him for that? A. $200.

"Q. What was it you said about salary? A. I told him I always worked on a salary; I preferred to have a salary.

"Q. Then you say he told you you were foolish; that you could put up $50 for thirty days; if you were satisfied, to pay the rest? A. Yes, sir.

"Q. Did you do that? A. Yes, sir.

"Q. How much did you give him? A. I gave him $50.

"Q.   Was that your money?   A.   Yes, sir.

"Q.   Lawful money of the United States?   A. Yes, sir."

It is apparent from this testimony that the representations to the prosecuting witness by defendant only resulted in obtaining the possession of the fifty dollars in money, and it is clear that the prosecuting witness did not, nor did he intend to, absolutely part with the ownership of the money; it was simply a deposit of that amount of money, pending negotiations for the sale of a certain interest in a business.   The ownership of the money remained in Mr. Keane after the deposit was made, and if the defendant availed himself of such temporary possession for a specific purpose, obtained by consent, through false and fraudulent representations to convert the money to his own use, and defraud the owner thereof, he is therefore acting against the will of the owner, and is a trespasser, and this case would be larceny.   Under the facts in this case, the jury should have been instructed to return a verdict of not guilty.   The testimony of the prosecuting witness makes it extremely doubtful, even if he intended to part absolutely with the title as well as the possession of the money, as to whether the representations made fall within the statute denouncing the obtaining of money by false pretenses.

As was said in State v. Cameron, 117 Mo. l. c. 648:

"It is not the policy of the law to punish as a crime the making of every foolish or ill-considered agreement.   If it is, the jails and prisons must be greatly enlarged.   'Where the pretense is absurd, or irrational, or such as the party injured had, at the very time, the means of detecting at hand, it is not within the act.' "

To this may be added what was said by SHERWOOD, J., in State v. Barbee, 136 Mo. l. c. 445:

"It is well-settled law, both in this State and elsewhere, that it is not every false pretense which can be

made the basis of a criminal prosecution. It must be such an one as is calculated to deceive.''

However, it is unnecessary to express an opinion upon that branch of the case.

For the reasons as herein indicated, the judgment of the trial court is reversed, and the defendant discharged.

All concur.