# THE STATE v. L. A. JAMISON, Appellant.

### Division Two, May 31, 1916.

1. **FALSE PRETENSE: Based on Contingency.** Under Sec. 4566, R. S. 1909, a conviction for larceny cannot stand upon proof showing that the person defrauded intentionally and for the identical purpose urged upon him by defendant parted with his money upon an agreed and well understood contingency.

.2. .————: **Falsely Representing the Law.** No felony can be committed in this State by falsely or mistakenly representing the domestic law to be that which it is not.

3. ————: ————: **Homestead Law.** Defendant claimed to own "squatters' rights" on a large tract of land in Arizona, and represented to the prosecuting witness that he could get title to a half section of it without living on it, and that all he would have to do would be to go out and see the land and then when the Government surveyed it to go again and file on it, and by·that means and in reliance thereon the witness was induced to contract for the land and to part with $125 on condition ·that defendant would maintain a squatter's right in the witness's interest until he secured a deed from the Government. *Held*, that the pretense relied on, though false, was as to the requirements of the Homestead Law; and it is not a crime, under Sec. 4565, R. S. 1909, to obtain money or property by falsely representing the status of the domestic law.

4. ————: ————: **Theory for Holding: Ignorance of Law: Deception.** It does not greatly matter whether the rule that to obtain money or property by falsely representing the domestic law to be that which it is not does not constitute a felony, is reached upon the theory that ignorance of law excuses no one and all men are presumed to know the law, or is based upon the other theory that no criminal false pretense may be bottomed upon a representation whose truth or falsity is as open to ascertainment by him to whom it is made as by him who makes it.

5. ————: **Strict Construction in Criminal Case.** It is one of the canons of the criminal law, out of tenderness and regard for life and liberty, that a rule of law is to be construed more strictly in a criminal case than in a civil one. Even in a civil case a misrepresentation or misunderstanding of the law will not vitiate a, contract, where there is no misunderstanding of the facts.

6. ————: **Puffing.** False representations touching land sold to another which amount to mere puffing are not actionable.

Appeal from Jackson Criminal Court.—*Hon. Edward E. Porterfield,* Judge.

REVERSED AND DEFENDANT DISCHARGED.

*Calvin & Rea* for appellant.

(1)   The testimony affirmatively established the fact that the prosecuting witness, T. M. Brown, parted with the title and possession of the money in question solely upon his belief in and in his reliance upon the alleged statement made to him by the defendant to the effect that he, Brown, did not and would not have to become a resident upon the land in question in order to obtain title thereto from the government. Such a statement could not, in law, become the basis of a false representation or pretense; and the testimony therefore wholly fails to sustain the conviction. Jones on Evidence (2 Ed.), sec. 26; Upton v. Tribilcock, 91 U. S. 45; Fish v. Cleland, 33 Ill. 243; Clodfelters v. Hewlitt, 72 Ind. 137; Burt v. Bowles, 69 Ind. 1; Ins. Co. v. Reed, 33 Ohio St. 283; Belfast v. Borne Co., 40 Ala. 50; Jagger v. Winslow, 30 Minn. 263; Gormley v. Gymnastic Assn., 55 Wis., 350; Thompson v. Ins. Co., 76 Me. 55. (2)   The testimony also affirmatively established the fact that the prosecuting witness, T. M. Brown, intended to, and that he did, part with the title to, as well as with the possession of the money in question; and, granting that the means by which defendant acquired the same amounted, in law, to a false pretense, still the testimony is wholly insufficient to sustain the conviction. State v. Buck, 186 Mo. 19; State v. Anderson, 186 Mo. 35; State v. Copeman, 186 Mo. 118.    (3)   The other alleged false representations and pretenses disclosed in the testimony (though not believed to be true or relied upon by the prosecuting witness, T. M. Brown) constituted no more than representations of future events; promises, mere matters of opinion or exaggerated praise, and the same could not, in law, be made the basis

of a prosecution for false pretenses. Stocking v. Howard, 73 Mo. 25; State v. Delaney, 93 Mo. 98; State v. Petty, 119 Mo. 425; State v. Marion, 235 Mo. 359; People v. Majorana, 140 N. Y. Supp. 8, 155 App. Div. 431; People v. Miller, 169 N. Y. 339; People v. Blanchard, 90 N. Y. 314.

*John T. Barker,* Attorney-General, and *W. T. Rutherford,* Assistant Attorney-General, for the State.

(1). While ignorance of the law cannot be pleaded as an excuse for crime, yet knowledge of the law for all intents and purposes will not be imputed to every one. Ryan v. State, 104 Ga. 73; State v. Bourne, 86 Minn. 432; State v. Stewart, 9 N. D. 409; Brent v. State, 43 Ala. 297; Osincup v. Heuthom, 46 L. R. A. (N. S.) 174; Windram v. French, 8 L. R. A. 750. Contra: State v. Lawrence, 178 Mo. 350. (2) Although the pretense must be an inducing cause of the owner's parting with his money, it need not be the sole inducing cause; it is sufficient if it had a material influence in inducing the owner to part with his property, although he was also influenced in part by other causes. State v. Willard, 109 Mo. 242; State v. Dexter, 87 N. W. (Iowa) 418; State v. Carter, 83 N. W. (Iowa) 716; State v. Nine, 74 N. W. (Iowa) 945; 19 Cyc. 407; State v. Donaldson, 243 Mo. 476. (3) In a prosecution for obtaining money or property under false pretenses when more than one such pretenses are charged, the proof of any one will sustain the charge. State v. Keyes, 196 Mo. 163. (4) When the false pretenses are calculated to deceive the person to whom they were made, and are not absurd or irrational, and the party relying on them has not the means at hand at the time to detect their falsity, the failure of such party to investigate the truth of them is no defense to the party making them. State v. Keyes, 6 L. R. A. (N. S.) 369; State v. Donaldson, 243 Mo. 476; 2 Wharton's Crim. Law, sec. 1453. (5). The testimony in the case shows that the prosecuting witness did not

part with the title to the money, but paid it to defend-
ant with the understanding and express agreement that
it was to be returned to him in the event he did not find
the land as represented, and the land being misrepre-
sented, the defendant on demand refusing to pay the
money back, was guilty of grand larceny. Hunt v. State,
65 L. R. A. (Ark.) 71; Morton v. Com., 52 L. R. A.
(N. S.) 1222; State v. Buck, 186 Mo. 19; State v. An-
derson, 186 Mo. 35; State v. Copeman, 186 Mo. 118;
People v. Miller, 169 N. Y. 344.

FARIS, P. J.—Defendant was convicted in the
Criminal Court of Jackson County of grand larceny,
under the provisions of section 4566, Revised Statutes
1909, and his punishment assessed at imprisonment in
the State penitentiary for a term for two years. Pur-
suant to the usual procedure he has appealed.

While the conviction here is, as stated, for grand
larceny, it is for that alleged sort of grand larceny which
the statute supra says may be bottomed upon false pre-
tenses. So leaving out of view all questions regarding
the legal propriety of such a conviction, because not in-
volved in the conclusions we have reached, we are yet
upon any view compelled to approach it on the theory
that if it be grand larceny it is so only because it in-
volves obtaining money by such false pretenses as con-
stitute grand larceny. Therefore, absent such false pre-
tenses as are criminal, it is obvious that there can be
no grand larceny in the case.

Looking therefore to the facts upon which the al-
leged false pretenses are bottomed, we find these facts
to run substantially thus: The prosecuting witness, one
T. M. Brown, was at all the times mentioned in this rec-
ord engaged in business as a merchant in Kansas City,
Missouri; the defendant seems to have been engaged in
business as a druggist in said city. Upon a time shortly
prior to the happening of the matters and things set
forth in the record before us, defendant seems to have

State v. Jamison.

begun to exploit a real estate scheme upon certain lands said to be situated in Pipe Valley in Mohave County, Arizona, and on which defendant claimed that his brother and he held a "squatter's right." The prosecuting witness Brown (hereinafter simply so called for brevity) heard of the alleged "squatter's right" which defendant claimed to have on this land, and being desirous, seemingly, of getting in on it, called defendant up on the telephone. Defendant came to see Brown and they began discussing this land proposition. According to Brown, defendant represented to him that defendant's brother, C. B. Jamison, and defendant, as partners, had secured the aforesaid "squatter's right" to something like 50,000 acres of Government land in northern Arizona, to-wit, in Pipe Valley, Mohave County; that they were locating people upon this land; that they had already placed about a hundred persons there; that it was fertile soil with plenty of moisture for dry farming and with artesian water obtainable at shallow depths, and in a beautiful flower-filled valley which would raise anything, and which would furnish and was furnishing grass and pasture for thousands of lowing kine. After defendant had explained the desirability and beauty of this land to Brown and its availability for homesteading, Brown says they had further converse thus: "I says, 'It would be impossible for me to take up that land; you and I all know to homestead or anything like that, you have to live on it about seven months out of the year.' I says, 'I could not leave my business and go out and stay seven months in the year.' He says, 'Mr. Brown, you would not have to do that; you can get this land absolutely without living on it; all you have to do is to go out and see the land and when the Government surveys it you will go out and file on it,' and then there was something like seventeen dollars for filing; 'then you can stay in Kansas City or Egypt and get this land.' He told me that the homestead laws of

the United States did not require me to live on this land.''

After some further conversation and discussion of the matter Brown and the defendant entered into a written contract, under the terms of which Brown paid to defendant the sum of $125 in cash, which sum constitutes the property herein alleged to have been obtained by false pretenses, and agreed upon a contingency therein named, and below made clear in the instrument we set out, to pay to him an additional sum of $125. The cash payment made by Brown to defendant was, upon the contingency set forth in said contract, to be returned.   This agreement is as follows:

''This agreement entered into this 12 day of August, 1912, by and between L. A. Jamison of Kansas City, Missouri, and C. B. Jamison of St. George, Utah, parties of the first part, and T. M. Brown of Kansas City, Missouri, party of the second part.

''Whereas, The said L. A. and C. B. Jamison agree to maintain a squatter's right on the west one-half of section 33, Jamison survey, located in Pipe Valley, Mohave County, Arizona, for and in the interests of said T. M. Brown; and further agree to look after all improvements on said one-half section of Jamison Survey, until the party of the second part secures his deed from the Government to said one-half section 33, Jamison Survey, for which service the parties of the first part hereby acknowledge receipt of $125, the said party of the second part further agreeing to pay $125 additional when he files with the Government, or within a period of time not to exceed three months thereafter; provided the party of the second part finds the above described land as represented.

''If, however, the party of the second part does not find this land as represented to him by the parties of the first part, or the entire proposition is not found to be as represented, in so far as ability to secure possession of same under the Smoot Act, then the parties of the

first part agree to return to party of the second part the $125 advanced payment, above mentioned and to waive the payment of the additional $125, then this contract to become null and void, otherwise to remain in full force and effect.

"In witness whereof, the said parties have hereunto set their names, this 12 day of August, 1912, A. D.''

Sometime after the said sum of $125 was paid by Brown to defendant, Brown went west with a view of examining the Pipe Valley, the *locus in quo,* and the tract of land described in the above written agreement. It was arranged for him to meet in the West the brother of defendant, said C. B. Jamison, who is jointly indicted herein with defendant, and who was to show Brown the land on which defendant claimed that he and this brother had "squatter's rights." In passing, it will no doubt be noted that the lands are said in the written agreement above to be located in "Pipe Valley." In the light of the facts of this case, the name given to this flowery valley seems significant, if not sinister.

Brown did not go upon these lands or see them, when he reached the vicinity of their alleged location, but having met said C. B. Jamison at a point some forty or fifty miles distant from Pipe Valley, and upon informing the latter of the representations made by defendant to him (Brown) that he would not be required to reside upon this land in order to homestead it, he was told by Jamison that if he expected to acquire title to these lands under the homestead law without actual residence thereon he would as well go home and get his money back from defendant. Thereupon Brown turned back and returned home to Kansas City without ever having seen Pipe Valley at all.

Other witnesses in the case from whom money in greater or less amounts was gotten by defendant upon similar representations and contracts, did go upon these lands and found them when examined, not to be as to

moisture and springs and artesian water, and as to population already present and coming, and perhaps as to other minor particulars, as represented by defendant.

A most flamboyant and highly colored pamphlet, descriptive of Pipe Valley, was printed and circulated by defendant. But since this pamphlet was not in existence at the time the money in controversy was obtained by defendant from Brown, we need not notice the statements contained in it, further than to say that according to Brown the statements made to him orally by defendant were similar to and equally as compli-mentary and highly colored as those contained in the pamphlet. Other witnesses, however, who testified as to other similar transactions with defendant, and who were offered by the State for the purpose of showing intent, did, they swear, pay defendant money on account of the representations contained in the pamphlet mentioned.

Upon the trial, and upon being asked to state specifically on what facts he relied when he paid defendant the money here in question, Brown answered categorically and repeatedly that he relied solely upon the statements to him of defendant that he could get this land and obtain a title to it under the homestead laws of the United States without being required to take up or maintain an actual residence on it. Being asked what the payment of the $125 in question here was made to defendant for, Brown said that this payment was *for getting this land, for looking after it and perfecting the title when it was surveyed and for doing certain improvements,* and that in addition, for the service above mentioned, he was to give defendant a further sum of $125.

When Brown got back home to Kansas City from the West, pursuant to the advice in such behalf given to him by C. B. Jamison, he went at once to defendant and demanded re-payment of the $125 which he had paid defendant. Defendant repeatedly promised to pay this

money back to Brown, but continuing to make default in this promise, he was subsequently arrested; the information herein was filed against him and this prosecution proceeded.

In passing, we may say that we have been unable to find anything in the record either describing the exact nature or negativing the existence of the alleged "squatter's right" claimed by defendant to be held in these lands by him and his brother; nor have we found any evidence as to whether or not defendant and his brother, or either of them, had any title, claim or rights— "squatter's rights" or any other sort—therein. The record seems to be silent as to this. But since, in the view we are compelled to take of this case *upon the record before us,* we are not impressed that it greatly matters whether these particular statements were false or not. The record is filled with a great mass of representations as to the nature and qualities and condition of the soil, climate, water, moisture, population, products, fauna and flora of Pipe Valley, and so mixed and tangled are these representations in the setting, as to make it difficult to pick and choose from the record those things which are permitted to be said, for that they fall into the category of "puffing," and those which are forbidden, because they are false representations which fall into the category of criminal acts. But as stated, in the view we take of this case we do not deem it necessary to pass upon these points.

To make clear the discussion some further facts will be found further along in the opinion.

Among other contentions it is urged that the evidence offered by the State (the defendant put in none) is not sufficient to make out a case. This contention is bottomed upon the fact that T. M. Brown, the prosecuting witness here and the person to whom the alleged false pretenses relied on for conviction were made, specifically says:

268 Mo.—13

"I relied upon what he told me about this land, and that I could get it absolutely without living on it, and I told him I would not have the land any other way, that I could not leave my business. He says you don't have to leave your business. You can stay right in China and any other seaport and get this land. All you have to do is go out and file on it after the Government surveys it and we will look after the balance of it. That is what I relied on."

On this state of facts defendant urges he cannot be convicted: because the pretense relied on, while false, is but as to a matter of law, which defendant's learned counsel urge, Brown is to be held, by a well-settled presumption, to know. In short, that knowledge as to the laws of the United States which fix the period and nature of the residence required in order to procure and "prove up" title on lands under the Homestead Law, will be imputed to Brown, and that a palpable lie touching same, will not constitute a felony in defendant, though the latter thrive financially thereby.

We state the case thus baldly and bluntly, though there is evidence (doubtless, however, for the triers of fact) from Brown himself, that he was not in fact misled, but that he knew the nature and period of the residence required upon lands sought to be homesteaded were not as represented to him by defendant. For discussing this matter with defendant, Brown said: "You and I all know, to homestead or anything like that you have to live on it about seven months in the year; I says, 'I could not leave my business and go out and stay seven months in the year.' " But we put aside the thought suggested by this condition of the record, and take the case upon the blunt point upon which respective counsel have seen fit to submit it: Is it a crime under section 4565, Revised Statutes 1909, to obtain money or property by falsely representing the status of the domestic law?

We think that the contention of defendant upon this point must be upheld. Defendant, it is true, was convicted of larceny, but the larceny of which he was convicted is wholly bottomed upon the false pretenses charged. If when measured by the ordinary rule which governs false pretenses it cannot stand, the whole case falls. In passing we may say that in no view, however, can this conviction for larceny stand, because the proof shows that Brown intentionally, for the identical purpose and no other urged on him by defendant and set out in the contract, parted with the title to the money in question upon a bare promise of defendant of repayment of the money to him upon an agreed and well understood contingency. This is not the sort of obtaining money or goods by false pretenses (State v. Anderson, 186 Mo. 25) which is said to be made larceny by section 4566 of our statute. [State v. Buck, 186 Mo. 15; State v. Copeman, 186 Mo. 108; State v. Anderson, supra.]

Coming back to the question of false pretenses, we are impelled to hold that no felony can be committed in this State by falsely or mistakenly representing the domestic law to be that which it is not. It does not greatly matter in so holding whether this view is reached upon the theory of that fictional presumption for procedural convenience that ignorance of the law excuses no one, and that therefore all men are presumed to know the law; or whether it be based upon the view that no criminal false pretense may be bottomed upon a representation wherein the ascertainment of the truth or falsity of the fact averred is as open to him to whom the representation is made as it is to him who makes it. [State v. Lawrence, 178 Mo. 350; State v. Cameron, 117 Mo. 641; State v. Barbee, 136 Mo. l. c. 445; State v. Anderson, 186 Mo. 25.]

The actions of the defendant here were reprehensible and morally inexcusable and he seems to merit richly the punishment which the jury assessed against him. But we cannot in order to punish him write into

the law a doctrine which may tomorrow send an ignorant but innocent man to the penitentiary. [State v. Powell, 266 Mo. 1. c. 108.] Almost this exact question was before this court in the case of State v. Lawrence, 178 Mo. 350, and while it is not in that case held in terms that no criminal prosecution can be based upon a false representation as to what the law is, it is yet said substantially, that a representation to the directors of a public school district that they were by law compelled to buy certain library books, when in fact there was no such law, furnishes its own reason why such representation was not calculated to deceive. Fox, J., who wrote the opinion in the above case, quoting GANTT and SHERWOOD, JJ., said:

"The expression of this court in State v. Cameron, 117 Mo. 1. c. 648, may be very appropriately applied to the facts of this case. GANTT, J., speaking for the court, said: 'It is not the policy of the law to punish as a crime the making of every foolish or ill-considered agreement. If it is, the jails and prisons must be greatly enlarged. "Where the pretense is absurd, or irrational, or such as the party injured had, *at the very time* the means of detecting *at hand*, it is not within the act." '

"To the same effect is the case of State v. Barbee, 136 Mo. 1. c. 445. It was said in that case by SHERWOOD, J.: 'It is well settled law, both in this State and elsewhere, that it is not *every false pretense* which can be made the basis of a criminal prosecution. It must be such an one as is calculated to deceive.' "

This conclusion is in line with the rule in other jurisdictions even in civil cases, wherein the rule against pretenses of the sort here under discussion ought to be more strictly construed against the tortfeasor than in a criminal case. Nevertheless, the rule is, that in a civil case a man will not be heard to contend that he was misled by a false representation of the domestic—as contradistinguished from the foreign—law of a given case or matter. [Upton v. Tribilcock, 91 U. S. 1. c. 50; Gorm-

ely v. Gymnastic Assn., 55 Wis. 350; Cooley on Torts (3 Ed.), 928-9; 1 Jones on Ev., sec. 26.] In the case of Upton v. Tribilcock, supra, at page 50, it was said, touching the effect in law of false statements as to the law:

"That a misrepresentation or misunderstanding of the law will not vitiate a contract, where there is no misunderstanding of the facts, is well settled. ·

"In Fish v. Cleland, 33 Ill. 243, the principle is expressed in these words: 'A representation of what the law will or will not permit to be done is one on which the party to whom it is made has no right to rely; and if he does so it is his folly, and he cannot ask the law to relieve him from the consequences. The truth or falsehood of such a representation can be tested by ordinary vigilance and attention. It is an opinion in regard to the law, and is always understood as such.' [See Starr v. Bennett, 5 Hill, 303; Lewis v. Jones, 4 B. & C. 506; Rasdhall v. Ford, Law Rep. 2 Eq. 750.]

"The law is presumed to be equally within the knowledge of all parties."

Since it is among the canons of the criminal law that a rule of law out of tenderness and regard for life and liberty is to be construed more strictly in a criminal case than in a civil one, we do not hesitate in holding that there can be no conviction for falsely representing the domestic law to be that which it is not. We have found no case exactly in point in criminal law, but the analogous cases as well as the analogous rules are against the criminality of the act. While we repeat, the acts of the defendant here were wrong and immoral, and upon no view to be excused, yet the law is not an exact science, and to hold that an erroneous or false representation of the domestic law upon a given point is a crime, would be to open a very Pandora's box of evils to the undoing of business contracts, and to make the criminal courts the guardians of all financial improvidents. Moreover, it is obvious, that in practice it would not

be possible to distinguish between that representation of the status of the law which is false, and that which is merely erroneous.

Since the prosecuting witness again and again stated that the sole reason he parted with his money was because he relied on defendant's statement that the law is that no actual residence is now required in order to acquire a Government homestead, and since this is not such a representation as is denounced by our statute (Sec. 4565, R. S. 1909), the demurrer ,to the evidence should have been sustained.

This view makes unnecessary an examination of the other points urged upon us for reversal. It must be held in mind that we are only passing upon the alleged false representation as to the law, upon which this case is specifically bottomed, and toward which the competent proof in this case is alone directed. Many other false representations touching the land in which defendant claims to have a "squatter's right" are charged; some of these would in our view have been sufficient if proved, to show a felony; but touching such of these as are sufficient in substance, there is no proof to make them out. Many others standing alone fall into the category of mere puffing (Stonemets v. Head, 248 Mo. l. c. 264), and are not actionable.

It follows that absent perjury it would seem to be not possible to strengthen this particular case upon another trial. Let it be reversed and the defendant discharged. All concur.