## THE STATE v. BUCK, Appellant.

Division Two, January 31, 1905.

1. **LARCENY: False Pretenses: Elements of Offenses.** Where the possession of personal property is obtained by fraud, and the owner of it intends to part with his title as well as his possession, the offense is that of obtaining property by false pretenses, provided the means by which it is acquired are such as, in law, are false pretenses. But if the possession is fraudulently obtained, with intent on the part of the person obtaining it, at the time he receives it, to convert it to his own use, and the person parting with it intends to part with his possession merely, and not with his title, the offense is larceny.

2. ———: **Broker: Employment: Money Deposited as Guaranty of Good Faith.** The evidence showed that in answer to a newspaper advertisement, the prosecuting witness went to defendant's place of business for the purpose of securing employment; witness was asked for references, which were given, and he was told to return; on his return defendant introduced him to A., stating to A. that witness had splendid references, and for him to do the best he could for him; A. demanded of witness $50 as a guaranty of his good faith, and told him to return the next day; on his return he was told by defendant that A. did not understand the business, and that it required $150 as a deposit for his honesty, inasmuch as witness would be required to handle $400 or $500 per day; witness later turned over the $150 to defendant, together with the receipt for $50, which A. had given him; defendant read to witness a statement, which he termed a receipt, showing that witness had paid him $200, which was considered a deposit with defendant to secure the honesty of witness in the conduct of the business, the under-

standing being that witness was to receive $15 per week for his services, the money deposited to be returned to him if he should become dissatisfied with his position; when witness became dissatisfied and quit defendant's service, he demanded his money from defendant, but defendant refused to pay it to him; what purported to be a receipt for this money was handed to witness, and he put it in an envelope and did not look at it for more than a week; it developed, however, that this was not a receipt, but a bill of sale of a one-half interest in the rooming-house department of defendant's business. *Held*, that this evidence is sufficient to support a verdict finding defendant guilty of larceny of the money.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel G. Taylor*, Judge.

AFFIRMED.

*John I. Martin* for appellant.

All the evidence offered by the State shows that if the defendant committed any offense it was false pretense and not larceny, and the information should have been under section 1927, Revised Statutes 1899. Wharton Crim. Law, secs. 2087, 2116 and 2118; State v. Green, 7 Wis. 676; State v. Evers, 49 Mo. 542; State v. Chunn, 19 Mo. 233; State v. Delay, 93 Mo. 98; State v. Tull, 42 Mo. App. 324; State v. Petty, 119 Mo. 425.

*Edward C. Crow*, Attorney-General, and *Sam B. Jeffries*, Assistant Attorney-General, for the State.

The rule is that where one obtains title to property from the owner by false pretenses, the owner at the time intending that title to the property shall be parted with, such person is not guilty of larceny. But where it is the intent of the owner to only part with the possession and not with the title to his property the person thus obtaining it is guilty of larceny. 2 McClain's Criminal Law, sec. 659; People v. Watson, 75 Mich. 582; State v. Jones, 93 Ga. 547. In this case, the State's testimony shows the prosecuting witness to have parted

with the two hundred dollars with the understanding and belief that it was to be returned to him. The prosecuting witness is shown to have only delivered the custody of the two hundred dollars to the defendant, he retaining the title. This constitutes larceny under the decisions of the courts on the subject. Zink v. People, 77 N. Y. 114; Murphy v. People, 104 Ill. 528; State v. Hill, 57 Wis. 377; Commonwealth v. Eichelberger, 119 Pa. St. 254; State v. Pease, 94 Ga. 615.

BURGESS, P. J.—At the December term, 1904, of the circuit court of the city of St. Louis, there was filed in the office of the clerk of said court an information by the circuit attorney of said city, charging the defendant Buck with having feloniously stolen from one Patrick J. Keane, at said city, the sum of two hundred dollars. Thereafter, defendant was put upon trial and found guilty and his punishment fixed at imprisonment in the penitentiary for three years. He appeals.

Patrick J. Keane, the prosecuting witness, lived at 3161a Clark avenue, St. Louis. He was a young man about twenty-two years old, and prior to March, 1903, was a clerk at the Laclede Gas Company, and became acquainted with defendant Buck on the tenth day of March, 1903, through an advertisement in the St. Louis Republic. It appears that Buck was engaged in the brokerage business under the name of the Atlas Brokerage Company, doing a business of buying and selling saloons, stores, dwellings, flats and apartment houses. He had placed an advertisement of some character in the Republic and it was in this way that Keane became acquainted with him.

On the morning of the tenth of March, Keane went to defendant's place of business at 612 Chestnut street, for the purpose of securing employment. He was met by defendant Buck, who asked him for references. The references were given and Buck told Keane

to return at one o'clock.  At the appointed time, Keane returned, when Buck introduced him to a man by the name of Anderson, at the same time stating to Anderson that he, Keane, had splendid references and for him to do the best he could for him.  At the same time Anderson invited Keane to go into an adjoining room where he demanded of Keane fifty dollars as a guarantee of his good faith and honesty in his employment, telling him to return the next day.  On the following day, Keane returned, where he found Buck, who told him that Anderson did not understand the business, and that it required one hundred and fifty dollars as a deposit for his honesty, inasmuch as he, Keane, would be required to handle in his employment four or five hundred dollars per day.  Keane left, stating that he would return the next day, which he did, bringing with him the additional one hundred and fifty dollars.  This he turned over to Buck, together with the receipt for fifty dollars which Anderson had given him.  Buck, as the evidence shows, read a statement which he termed a receipt, showing that Keane had paid him the sum of two hundred dollars which was considered a deposit with Buck to secure the honesty of Keane in the conduct of his business, in which he was to be engaged, the understanding being that Keane was to receive fifteen dollars per week for his services, the money deposited to be returned to him when he became dissatisfied with his position.  When Keane became dissatisfied and quit the service of Buck, he demanded his money from Buck, but he refused to pay it to him.  What purported to be a receipt for this money was handed to Keane and he put it in an envelope and did not look at it for more than a week.  It developed, however, that this was not a receipt, but a bill of sale of a one-half interest in the house department.  Keane remained in the employ of Buck about three or four weeks, during which time he drew $15.75 in salary.

The defense was that Keane purchased from de-

fendant a one-half interest in the rooming-house business, and the money turned over by Keane to him was in payment for such interest.

No just complaint can be made of the instructions, so that the only question for our consideration is as to whether or not defendant was, under the evidence, guilty of grand larceny. If Keane had no intention of parting with his money when he turned it over to defendant, but only gave defendant temporary possession thereof as security for the faithful performance of his duties as the employee of defendant, and defendant, thereafter, feloniously appropriated it to his own use, against the will or consent of Keane with the purpose and intent of depriving Keane of it, he was guilty of grand larceny; otherwise not.

The distinction between larceny, false pretenses and embezzlement is concisely stated in Commonwealth v. Barry, 124 Mass. 325, as follows: "If a person honestly receives the possession of the goods, chattels or money of another upon any trust, express or implied, and, after receiving them, fraudulently converts them to his own use, he may be guilty of the crime of embezzlement, but cannot be of that of larceny, except as embezzlement is by statute made larceny. If the possession of such property is obtained by fraud, and the owner of it intends to part with his title as well as his possession, the offense is that of obtaining property by false pretenses, provided the means by which they are acquired are such as, in law, are false pretenses. If the possession is fraudulently obtained, with intent on the part of the person obtaining it, at the time he receives it, to convert the same to his own use, and the person parting with it intends to part with his possession merely, and not with his title to the property, the offense is larceny."

In People v. Morse, 99 N. Y. 662, the defendant advertised for a clerk. A Miss Herder applied for the position and was required by defendant to deposit $600

in cash as a security for the faithful performance of the duties of the position. A Miss Wilson, a friend of the applicant, thereupon delivered to defendant six $100 bills, upon which the defendant agreed to pay interest, which was to be returned to Miss Wilson when Miss Herder quit the service of defendant. The defendant appropriated the money to his own use. The court charged the jury as follows:

"If you are satisfied from the evidence beyond any reasonable doubt that it was the design of the defendant, Carrie R. Morse, to fraudulently and feloniously obtain the complainant's money and convert it absolutely to her own use without the complainant's consent, and that in pursuance of that design the defendant so obtained $600 by the means and in the manner and under the circumstances testified to by the People's witnesses, with the intention of converting the money absolutely to her use without the consent and against the will of complainant, and that the complainant did not intend to part with the $600 absolutely, but only gave the accused temporary possession thereof as security for the faithful performance of the duties of Hattie M. Herder, I charge you that you can and ought to convict the defendant of grand larceny—otherwise, she should be acquitted."

The defendant in that case was convicted of grand larceny, and the judgment affirmed upon appeal. That case is cited with approval in People v. Dumar, 106 N. Y. 502; People v. Miller, 169 N. Y. 339.

In the case of People v. Gottschalk, 20 N. Y. Supp. 777, the evidence showed, "that, in answer to an advertisement by one W., seeking employment, and offering security, defendant, by false representations, and with intent to steal $200, deposited, according to advertisement, with him by W. as a pledge, the title to remain in pledgor, contracted with W. for his services, and agreed to return such pledge on the termination of the contract. The contract was subsequently terminated,

after which defendant agreed with W. to return the money so pledged in two payments, but failed to do so. Held, that there was no variance, as under the indictment and facts the offense of larceny at common law was charged and proven.'' It was held that the offense of larceny at common law is established by proof that defendant obtained possession of the property by some trick, fraudulent device, *animo furandi,* with the intention of subsequently appropriating it to his own use. In the same case it is said: ''At common law, when the owner of property, induced by false and fraudulent representations, intends to part with the title thereto, the crime of procuring property by false representations is committed, and not the crime of larceny. Where, however, the intention not to part with the title to the property appeared, even though possession thereof may have been obtained by trick, device or fraudulent representations, it was larceny.'' The same rule is announced in Smith v. People, 53 N. Y. 111; Com. v. Eichelberger, 119 Pa. St. 254; Murphy v. People, 104 Ill. 528; Com. v. Finnegan, 124 Mass. 324.

In State v. Anderson, 186 Mo. 25, there is quoted with approval the following from Loomis v. People, 67 N. Y. 322:

''While the element of trespass is wanting and the offense is not larceny, where consent is given, and the owner intended to part with his property absolutely, and not merely with a temporary possession of the same, even although such consent was procured by fraud, and the person obtaining it had an *animus furandi,* yet it is well said by a writer upon criminal law: 'It is different where, with the *animus furandi,* a person obtains consent to his temporary possession of property, and then converts it to his own use. The act goes farther than the consent, and may be fairly said to be against it. Consent to deliver the temporary possession is not consent to deliver the property in a

thing, and if a person, *animus furandi*, avail himself of a temporary possession for a specific purpose, obtained by consent to convert the property in the thing to himself and defraud the owner thereof, he certainly has not the consent of the owner. He is, therefore, acting against the will of the owner, and is a trespasser, because a trespass upon the property of another is only doing some act upon that property against the will of the owner.'

"There is, to be sure, a narrow margin between a case of larceny and one where the property has been obtained by false pretenses. The distinction is a very nice one, but still very important. The character of the crime depends upon the intention of the parties, and that intention determines the nature of the offense. In the former case, where by fraud, conspiracy or artifice, the possession is obtained with a felonious design, and the title still remains in the owner, larceny is established. While in the latter, where title, as well as possession, is absolutely parted with, the crime is false pretenses." To the same effect is People v. Morse, 99 N. Y. 662.

In State v. Copeman, 186 Mo. 1. c. 118, in passing upon the question of larceny, Fox, J., in speaking for the court, said: "In other words, where the ownership of the property is not parted with, and by a fraud or trick the possession of the property alone is obtained, and is converted to the use of the taker without the consent, and at the time of resorting to the trick or fraud to obtain the possession it was intended to convert the property and permanently deprive the owner of it, this would constitute larceny at common law as well as under the statute. [1 Bish. New Crim. Law, sec. 585; State v. Murphy, 90 Mo. App. 548; Loomis v. People, 67 N. Y. 322; State v. Vickery, 19 Tex. 326; 12 Am. and Eng. Ency. of Law (2 Ed.), 805.]"

The same rule is announced in Welsh v. People, 17 Ill. 339, where it is said: "Where, as in this case, the alleged larceny is perpetrated by obtaining the possession of the goods by the voluntary act of the owner, under the influence of false pretenses and fraud, when the cases are carefully examined and well understood, there is no real difficulty in deducing the correct rule by which to determine whether the act was a larceny and felonious, or a mere cheat and swindle. The rule is plainly this: if the owner of the goods alleged to have been stolen, parts with both the possession and the title to the goods to the alleged thief, then neither the taking nor the conversion is felonious. It can but amount to a fraud. It is obtaining goods under false pretenses. If, however, the owner parts with the possession voluntarily, but does not part with the title, expecting and intending that the same thing shall be returned to him, or that it shall be disposed of on his account, or in a particular way as directed or agreed upon, for his benefit, then the goods may be feloniously converted by the bailee, so as to relate back and make the taking and conversion a larceny. The pointed inquiry in such a case must always arise, did the owner part with the title to the thing, and was the legal title vested in the prisoner?"

In Stinson v. People, 43 Ill. 397, the same doctrine was announced. It was there, among other things, said: "If, however, the owner parts with the possession voluntarily, but does not part with the title, expecting and intending the same thing shall be returned to him, or that it shall be disposed of on his account, or in a particular way as directed or agreed upon for his benefit, then the goods may be feloniously converted by the bailee, so as to relate back, and make the taking and conversion a larceny, if the goods were obtained with that intent."

These and many other cases which might be cited illustrate the principle that obtaining the possession

of money or property with the intention to steal, by trick, fraud or artifice, amounts to larceny. There is no escape from the conclusion that defendant intended to steal Keane's money when he first met him. At that time he turned him over to Anderson, who was engaged with defendant in his business to arrange with him the details of his employment. Anderson only required of him a deposit of fifty dollars as a guaranty of his honesty, but when Keane returned, defendant told him that Anderson did not understand the business, and as four or five hundred dollars would pass through his hands every day, he must deposit one hundred and fifty dollars more, and to go home and bring the money, and the receipt for the fifty dollars which he had paid to Anderson. Then when Keane returned with the money, he took up that receipt, and instead of giving Keane a receipt for the money, he gave him a bill of sale for a one-half interest in the rooming-house business, which he read to Keane as a receipt for the money, and in that way deceived and imposed upon him said bill of sale.

It looks unreasonable that Keane should be required to deposit with defendant as a guaranty of his honesty as an employee two hundred dollars, when he could have bought a half interest in the rooming-house business for the same amount. Defendant's idea of what would have been a fair and reasonable deposit seems to have differed very greatly from that of Anderson's and verifies defendant's statement that "Anderson did not understand the business," viewed from his standpoint, in that he did not get from Keane more money.

Stranger still is the contention that the two hundred dollars paid by Keane to defendant Buck was for the purchase price for a half interest in the rooming-house, when in fact Keane was to receive fifteen dollars per week for his services, and did in fact receive fifteen dollars and seventy-five cents on that ac-

count. If he really owned, as contended by defendant, such an interest in the property, he was receiving a salary for looking after his own interests. This seems to be incredible.

It was the province of the jury to pass upon the question of defendant's intent in obtaining the money from Keane, and they have found it to be fraudulent. It was fairly submitted to them as a question of fact, with the instruction, substantially, that they must be satisfied from the evidence, beyond a reasonable doubt, that the defendant took the money feloniously, with intent to convert it to his own use, or that he obtained it by fraud, with a like felonious intent at the time he obtained it.

The jury also found against the contention of defendant that the money was paid to him by Keane in consideration for a one-half interest in the rooming-house department. There was ample evidence to justify the finding of the jury, and this being so, we must decline to interfere. The judgment is affirmed. It is so ordered.

All concur.