No. 23,531.

EMMETT H. HILL and R. F. HOWARD, doing business under the firm
name of the HILL-HOWARD MOTOR COMPANY, *Appellees,* v. THE
NORTH RIVER INSURANCE COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

INSURANCE—*Against "Theft, Robbery or Pilferage"—Obtaining Property by
Impersonation, Fraudulent Representation and Fraud—Loss Covered by
the Insurance Policy.* Under a' contract of insurance issued to protect a
dealer in automobiles against "theft, robbery or pilferage," the act of a
swindler who deprived the insured of an automobile by means of a pre-
conceived plan which involved impersonation, misrepresentation and fraud
was a species of theft for which the insurance company was liable.

Appeal from Cowley district court; OLIVER P. FULLER, judge. Opinion
filed May 6, 1922. Affirmed. ‹

*Ellis Fink,* of Winfield, *C. C. Crow,* and *James W. Broaddus,* both of
Kansas City, Mo., for the appellant.
*W. L. Cunningham,* of Arkansas City, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The question in this case is whether the holder of
an insurance policy "against theft, robbery or pilferage" of his
automobile may recover on such policy in a case where he was de-
prived of his car by a preconceived scheme of impersonation, mis-
representation and fraud. The facts were as follows:

A reputable mechanic in Arkansas City named Ben Cole, who
was a member of the Boilermakers' Union, employed by the Santa
Fe railway, and who had money in the bank, was robbed of his
union card and bank check book by a rogue named Montgomery
who afterwards appeared' at the plaintiff's place of business. Plain-
tiff was engaged in selling automobiles on easy payments to Santa
Fe workmen. Montgomery pretended that he was Ben Cole, and
said he desired to purchase an automobile on periodical payments.
He gave his name as Ben Cole, showed Cole's union card and check
book, and made a bargain to buy a car from plaintiff on payments,
$100 cash, etc., and contracted in writing that the ownership of the
car should remain in plaintiff and that the car would not be re-
moved from Cowley county without plaintiff's written consent. The
swindler haggled with plaintiff until after banking hours, and then

proffered a check for a hundred dollars drawn on Cole's bank and signed in the name of Ben Cole. The plaintiff called the bank by telephone and was assured that Ben Cole had an account with it, and that Cole's check was good for that sum. Led by these induce- ments, plaintiff parted with the car and accepted the check. The swindler took the car, got his personal belongings from his boarding house, and he and the car vanished.

Action on the insurance policy; judgment for plaintiff, defendant appeals.

Was plaintiff's loss within the terms of the insurance policy? Our criminal law defines stealing and obtaining property by false pretenses as distinct offenses, although the punishment for each is the same. (Gen. Stat. 1915, § 3467; Laws 1920, ch. 38, §§ 1, 2.) It may well be that in a prosecution for the crime narrated the strict rules of our criminal law would require that the swindler be charged with the latter offense rather than the former. But it cannot be said that the contract of insurance was drawn to fit the narrow limitations of the Kansas crimes act. In the analogous case of *Grain & Supply Co. v. Casualty Co.*, 108 Kan. 379, 195 Pac. 878, 16 A. L. R. 1488 and note, where the action was against a fidelity company to reimburse plaintiff "for such loss of money, securities and personal property . . . which the employer shall have sus- tained by reason of any act, or acts constituting larceny or em- bezzlement, committed by the employee," it was held that acts constituting embezzlement were not to be construed under the strict rules of local criminal law, but that—

"The bond is to be interpreted in the light of its nature as a contract of insurance, in view of its purpose as such, and with a considerable degree of liberality in favor of the insured and against the insurer by reason of its having framed the contract. A risk fairly within its contemplation is not to be avoided by any nice distinction or artificial refinement in the use of words. The term 'embezzlement' must be deemed to have been used in its general and popular sense rather than with specific reference to the precise definition of the local statute." (p. 382.)

The prevailing rule is that any scheme whether involving false pretenses or other fraudulent trick or device whereby an owner of property is swindled out of it with the preconceived intent of the swindler not to pay for it, is classed as larceny and is punished accordingly. Here the swindler planned to fraudulently get pos- session of the plaintiff's property with intent to deprive him of it without his consent. The swindler's pretense that he was Ben Cole,

and the exhibition of Cole's union card and check book, his delaying the deal until after banking hours, etc., were merely the means which he used to obtain possession of the car and deprive the owner of it. So, too, the taking of the car out of Cowley county was a fraudulent taking of possession with intent to deprive the owner of it. Plaintiff never freely consented to sell the automobile to any person except the real Ben Cole. He never consented to part with his title without full payment. He never consented to anybody's possession of the car except within the limits of Cowley county.

Under these circumstances, the plaintiff was deprived of his property by a species of theft, and such an offense is generally so defined.

In 3 Bouvier (Rawle's 3d Rev.) 3267, *theft* is thus defined:

"A popular term for larceny.

"It is a wider term than larceny and includes other forms of wrongful deprivation of property of another.

"Acts constituting embezzlement or swindling may be properly so called."

In 25 C. J. 657, the distinction is drawn between the closely allied crimes of obtaining property by false pretenses and larceny, but there, supported by many authorities, it is said:

"The distinction between the crimes of obtaining by false pretense and larceny lies in the intention with which the owner parts with the property. If the owner in parting with the property intends to invest the accused with the title as well as the possession the latter has committed the crime of obtaining the property by false pretense. But if the intention of the owner is to invest the accused with the mere possession of the property, and the latter with the requisite intent receives it and converts it to his own use, it is larceny."

Here it was perfectly plain that Montgomery's fraudulent scheme to deprive plaintiff of the automobile was preconceived. This constituted larceny as defined in Corpus Juris, *supra,* and as defined in Bouvier, *supra.* In *The State v. Woodruff,* 47 Kan. 151, 27 Pac. 842, the defendant was convicted of stealing a mare. The evidence showed that he had preconceived the plan to deprive the owner of the animal, and he effected that object by going to the owner and telling him he had the toothache and wanted to hire the beast to ride to town, stating that he would return it at noon. The owner consented and assisted in saddling and bridling the mare. The defendant made away with the mare, and it was never found or recovered. This court said:

"Where a person obtains possession of a horse with the consent of the owner, by falsely and fraudulently pretending that he wants to use him a

short time for a temporary purpose, and will return him to the owner at a specified time, when in fact he intends to and does wholly deprive the owner of the horse and appropriates him to his own use, there is such a taking and carrying away as to constitute the offense of grand larceny." '(Syl. ¶ 1.)

In *The State v. Flaherty*, 103 Kan. 393, 173 Pac. 919, the defendants were convicted of grand larceny. The evidence showed that they preconceived a plan to swindle George Roth out of $5,350 by inducing him to bet that sum of money on a fake horse race. The money was received by an associate of defendants', and the swindlers pursuant to their preconceived scheme converted it to their own use. This court said:

"It is argued that the statute does not embrace every act which was larceny at the common law, and that it is not larceny to obtain possession of money by some trick, fraudulent device, artifice, or means, with the intention of stealing the same. This argument is not good. 17 R. C. L. 16 uses this language:

" 'Obtaining money under the pretense that it is to be bet on a race, and with the intent at the time to convert it to the bailee's own use, the race being a mere sham to aid this purpose, is larceny.' " (p. 394.)

In *Tredwell v. United States*, 266 Fed. 350, it was held:

"If, at the time of lawfully coming into possession of property of another, the one to whom the property is intrusted has the intention of appropriating it to his own use, the crime thus committed is larceny." (Syl. ¶ 3.)

In *Towns v. State*, 167 Ind. 315, it was held that the soliciting and receipt of money, by defendant, at a church, with the intent to appropriate such money to his own use, falsely representing to the contributors that such money was to be used for a certain benevolent purpose, constituted the felonious elements of larceny.

To the same effect are: *The State v. Brown*, 25 Iowa, 561 (impersonation with intent to deprive owner of mare); *People v. Morse*, 99 N. Y. 662 (false pretenses with intention to deprive owner of money); *Commonwealth v. Lawless*, 103 Mass. 425 (impersonation of a soldier with intent to deprive of bounty).

We have examined the case of *Delafield v. London & Lancashire Fire Ins. Co.*, 164 N. Y. Supp. 221; 177 App. Div. 477, relied on by appellant. The reference to the insurance policy in both opinions is too brief to compare its terms with the one at bar, and the facts appear to have involved a bailment to the swindlers with power to sell and their promise to pay a fixed sum for the car *after* its sale by the bailee, etc. The court, appellate division, held:

"While this policy insures against 'theft,' it seems clear that it was not the

intention of the parties to the contract of insurance to insure against larceny by trick and device; that is theft, the commission of which involves as an essential element, the deception of the insured, resulting in a surrender of the possession of his property. The term 'theft', as used in this policy, does not include all forms of larceny recognized by law. It does not include a larceny perpetrated as this was under the form and guise of a business transaction conducted by the insured himself." (p. 480.)

It seems that this New York case may have had several features to distinguish it from the one before us; but whether it had or not, it does not persuade us to abandon the reasoning of our own analogous case first above cited, nor of the other cases which we have mentioned, nor does it shake our conviction that the case at bar was correctly decided; and the judgment is affirmed.