Jones, J.
 

 While the conceded facts disclose that
 
 *157
 
 Lewis secured possession and title to the automobile by swindle, they no less disclose that the owner, Jack, voluntarily parted with both posses sion and title upon the faith , of the fraudulent representations made by Lewis. Under the circumstances disclosed, there is no doubt but that Lewis would be guilty of obtaining property under false pretenses under Section 13104 of our criminal code. However, Lewis would not be guilty of larceny of the automobile under Section 12447 or Section 12448, General 'Code.
 

 The defendant in error relies for recovery upon the principles announced in the
 
 Kansas cases: Hill
 
 v.
 
 North River Ins. Co.,
 
 111 Kan., 225, 207 P., 205, 24 A. L. R., 736, and
 
 Overland-Reno Co.
 
 v.
 
 International Indemnity Co.,
 
 111 Kan., 668, 208 P., 548. It must be conceded that if these cases were followed the plaintiff below would be entitled to recover upon the facts presented. The
 
 Kansas cases
 
 decide that, under a clause in the insurance policies contracting against “theft, robbery, or pilferage,” the act of a swindler by which the owner of the property is swindled out of it through false pretenses with preconceived intent is a species of theft for which the insurance company becomes liable. Both
 
 Kansas cases
 
 state that:
 

 “The prevailing rule is that any scheme whether involving false pretenses or other fraudulent trick or device whereby an owner of property is swindled out of it with the preconceived intent of the swindler not to pay for it, is classed as larceny and is punished accordingly.”
 

 Such a, scheme, if it involves transfer of both
 
 *158
 
 possession and title to property pursuant to a sale, is not classed as larceny in this state.
 

 In
 
 Kellogg
 
 v.
 
 State,
 
 26 Ohio St., 15, McIlvaine, C. J., delivering the opinion, said at page 19:
 

 “Where the owner intends to transfer, not the possession merely, but also the title to the property, although induced thereto by the fraud and fraudulent pretenses of the taker, the taking and carrying away do not constitute a larceny. In such case the title vests in the fraudulent taker, and he cannot be convicted of the crime of larceny, for the simple reason that, at the time of the transaction, he did not take and carry away the goods of another person, but the goods of himself.”
 

 In the case of
 
 Illinois Automobile Ins. Exch.
 
 v.
 
 Southern Motor Sales Co.,
 
 207 Ala., 265, 92 So., 429, 24 A. L. R., 734, the policy contained a clause insuring an automobile against “theft, robbery, or pilferage. ’ ’ There was a sale of the automobile for an agreed price to a purchaser who falsely represented that two notes given by him were secured. It was there insisted that this constituted a theft under the policy. The Alabama court, citing the Ohio case of
 
 Kellogg
 
 v.
 
 State, supra,
 
 held that there could be no recovery, Judge .McClellan announcing the same rule that Chief Justice McIlvaine announced in the
 
 Kellogg case,
 
 that:
 

 “The doctrine is well established that, where the owner intends to transfer, not the possession merely, but also the title to the property, although induced thereto by the fraud or fraudulent pretenses of the taker, the taking and carrying away do not constitute theft or larceny.”
 

 Like our own state, Iowa has a criminal code
 
 *159
 
 making larceny and obtaining property by false pretenses separate criminal offenses. Recognizing the distinction between tbe two, and holding that theft is the equivalent of larceny, a term used in their criminal statute, the Supreme Court of Iowa denied recovery against an insurance company which had insured against loss by “theft.”
 
 Cedar Rapids Nat. Bank
 
 v.
 
 American Surety Co.,
 
 197 Iowa, 878, 195 N.
 
 W.,
 
 253 (1923). Sustaining the principle announced in the Ohio case,
 
 supra,
 
 Evans, J., said:
 

 “If the wrongdoer by false pretenses or trick induce the injured party to surrender to him the possession of the property without any intent of the injured party to pass the title of such property to the wrongdoer, and if the wrongdoer so obtain possession of the property with intent to appropriate the same to his own use, then the crime thus committed is a larceny by trick. In such' a case the fraudulent inducement is deemed the equivalent of a trespass and of a felonious taking, which is an essential element of the crime of larceny. On the other hand, if the wrongdoer fraudulently induce the injured party to surrender to him not simply the temporary possession of the property, but the absolute title and possession of the property, then his offense is that of obtaining property by false pretense, and not that of larceny.”
 

 If there was no intention on the part of the owner to part with the possession and title of the car, if no sale was contemplated, but possession was secured from the owner by a trick, or with the intention of stealing it, the' wrongdoer might
 
 *160
 
 be guilty of larceny. If, under the clause of the insurance contract, theft and larceny are synonymous, it must be conceded that, since there was no larceny, there was no theft. It is urged that a liberal construction should be given to an insurance contract under the ordinary rules of construction relating to insurance contracts, and that the term “theft” has a much broader meaning than that of larceny; that the obtaining of property, not by way of stealing, but by means of false pretenses and swindling, should constitute theft under the contractual terms of the policy. In giving a construction to that term in the policy, Ave should seek for the usual meaning of the term as it is employed in its common usage. The ordinary person does not have in contemplation that the securing of property by false pretense connotes theft. In legal contemplation, and especially in Anew of the decision of this court in
 
 Kellogg
 
 v.
 
 State, supra,
 
 we are reminded that the swindling of another by means of which title and possession to property are obtained from the OAvner is neither theft nor larceny. Nor can it be said that the Legislature contemplated that there was any difference between the tAvo terms. In the codification of our criminal laws pertaining to offenses against property, we find that the larceny sections, 12447 and 12448, General Oode, immediately follow, under the subtitle “theft.”
 

 The application of the rule of construction sought by the defendant in error would require an insurance company to become liable for all losses where, in a business transaction, the seller of an article might part AAdth the possession and title
 
 *161
 
 of his property upon the faith of fraudulent representations made to him by the buyer. In any case where fraudulent representations were made whereby possession and title to the property were procured from the owner by means of false pretenses or fraudulent representations, an insurance company might become liable should the owner fail to take sufficient precaution in the sale of his property. In the common and employed usage of the term “theft,” we think that neither the insured nor the insurer contemplated that it should cover transactions of the character testified to by the defendant in error. Such a construction applied to similar transactions might lead to a plight where the seller might make inefficient effort to discover if the representations made were true or false.
 

 Under the terms of a policy written to indemnify the owner of an automobile against loss by “theft, robbery, or pilferage,” the Supreme Court of Georgia, in
 
 Gunn
 
 v.
 
 Globe & Rutgers Fire Ins. Co.,
 
 24 Ga. App., 615, 101 S. E., 691, held that the usual and ordinary meaning should be given to those words, and that the reasonable intention of the contract should not be extended to cover a fraudulent conversion by a bailee. The court said:
 

 “The true and manifest intent and spirit of the contract should not be so technically construed as to require that it partake of the nature of a blanket fidelity bond guaranteeing the integrity of all such persons as may be intrusted by the owner with the possession and control of the article covered by the policy of insurance.”
 

 The most recent case upon the subject is that
 
 *162
 
 of
 
 Van Vechten
 
 v.
 
 American Eagle Fire Ins. Co.,
 
 239 N. Y., 303, 146 N. E., 432, decided in January, 1925. The provisions contained in that policy insured the automobile against “theft, robbery, or pilferage.” The penal laws of New York made any one who took or removed an automobile from a garage without consent of the owner guilty of larceny. The proprietor of a garage took the car without the consent of the owner, and under the statute was guilty of the offense of larceny. The New York Court of Appeals, construing the insurance contract, held that, though larceny may have been committed, it was not theft within the meaning of the contract; that “theft under this contract is theft as common thought and common speech would now image and describe it,” that the insured and insurer “spoke in terms so common, so responsive to realities, as to have a meaning everywhere. By this they must abide.” The New York Court of Appeals also stated that another consideration emphasized the need for uniformity of meaning, and in the course of the opinion, said:
 

 “The policy does not limit its protection to casualties suffered while the car is in New York. Theft, robbery and pilferage in any other state are equally within its terms. This without more is sufficient to forbid a reading that would cause the risks to vary with the accidents of local laws. Neither insured nor insurer can have believed that the same act would be theft within the purview of the contract if committed in New York, and a mere trespass or conversion if committed in Massachusetts or New Jersey.”
 

 The risk or peril insured against in the policy
 
 *163
 
 in this suit was “theft, robbery, or pilferage,” excepting the “wrongful conversion or secretion by a mortgagor or vendee in possession under mortgage, conditional sale, or lease agreement.” The argument is advanced that the insurance company, having inserted the specific exclusion relating to mortgagors and conditional vendees in possession, thereby indicated that other transactions with vendees involving trickery or fraud should be construed broadly as coming generally within the term “theft.” This insistence fails to give effect to the purpose of the exception, which limits rather than extends the scope of the term.
 

 Standard policies are in force in various states, where penal laws or judicial decisions might declare that where possession of the article was held by a pledgor or vendee under conditional sale, by fraud or otherwise, its conversion later would constitute theft or larceny. This must have been the purpose of the exception relating to theft, not to expand its definition so as to cover a vendee who had obtained both possession and title -with the consent of the vendor, even though fraud intervened in so doing. One can readily understand that if indicia of fraud are so involved in the sale of property as to constitute theft, not only would the risk of insurance be greatly enhanced, but such transaction would have a tendency to place a premium on shiftless bargains made by careless vendors. We are constrained to give that construction to the word “theft” that is understood by persons in the ordinary walks of
 
 *164
 
 life, and not the definition given it by the Kansas court — one unknown to the laity.
 

 The common pleas court committed no error in directing a verdict for the defendant. The judgment of the Court of Appeals is reversed, and that of the common pleas affirmed.
 

 Judgmmt reversed.
 

 Matthias, Kinkade and Robinson, JJ., concur.
 

 Marshall, C. J., Day and Allen, JJ., dissent.