[L. A. No. 10643. In Bank.—June 17, 1929.]

WILLARD O. FISKE, Respondent, v. NIAGARA FIRE INSURANCE COMPANY OF NEW YORK (a Corporation), Appellant.

David R. Faries, John R. Berryman, Jr., and Edwin Heizman for Appellant.

David D. Stuart for Respondent.

SEAWELL, J.—This action was brought by the plaintiff to recover on an assigned contract of insurance, based upon the following enumerated perils insured against and the exceptions thereto:

"(c) *Theft, robbery or pilferage,* excepting by any person or persons in the Assured's household or in the Assured's service or employment, whether *the theft, robbery or pilferage occur during 'the hours of such service or employment or not,* and excepting the *wrongful conversion, embezzlement,* or *secretion* by a mortgagor or *vendee* in possession under mortgage, *conditional sale* or *lease agreement,* and excepting in any case, other than in case of the theft of the entire automobile described herein, the theft, robbery or pilferage of tools and repair equipment." (Italics ours.)

The defendant demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action. The lower court overruled the demurrer and, defendant having declined to answer, judgment was entered in the sum prayed for. The defendant prosecutes this appeal therefrom on the judgment-roll. The plaintiff's assignor and one Spainhower on February 21, 1923, entered into a conditional contract of sale by the terms of which plaintiff's assignor agreed to sell the automobile to Spainhower for $400, payable $140 upon the execution of the contract and the balance at the rate of $30 per month.

Subsequent to the execution of the contract, which was also subsequent to the delivery of the check for $140, but prior to the delivery of the automobile, the insurance policy was issued by the appellant, insuring the plaintiff's assignor and Spainhower "jointly and severally" against loss occurring by reason of "theft, robbery or pilferage," subject to the exceptions above enumerated in said paragraph (c) of said contract of insurance. Spainhower disappeared with the automobile, and neither he nor the automobile was thereafter located. The sole question to be solved is whether it was the intent of the parties to the insurance policy to insure against the loss of said automobile in the manner above described. In other words, what did the parties contemplate by the use of the words and phrases and exceptions employed in said paragraph? This transaction transpired long prior to the act of the legislature which expanded and defined the meaning of the word *theft* in its application to larceny. If it be conceded solely for the purpose of argument that the legal definition of the word *theft* as used in the contract of insurance included the act of obtaining possession of said automobile in the manner described in the complaint, nevertheless plaintiff could not recover thereon, for the reason that it is clear that the parties thereto intended to exclude (and certainly not to include) as a risk or peril insured against, the kind of dishonest acts which the vendor of said automobile charges against the person whom he voluntarily selected as a conditional purchaser of said automobile. Paragraph (c) of the contract, upon which plaintiff relied to sustain his action, does unquestionably by necessary implication, if not by express terms, exclude the acts which form the gist of this action as constituting risks insured against. If the rule of *ejusdem generis* as applied to the first four words of said paragraph (c), to wit, "theft, robbery or pilferage," as those words are commonly if not universally understood by the public, is not absolutely conclusive of the point that the parties meant thereby those ordinary acts of dishonesty accomplished by stealth or force, in which the owner of the property is not a voluntary participant, certainly the remaining portion of the sentence, to wit, "excepting by any person or persons in the assured's household or in the assured's service or employment, whether the *theft, robbery*

or *pilferage* occur during the hours of such service or employment or not, . . . '' removes all doubt and makes it absolutely certain as to the kind of acts committed by third persons that were intended to be and were covered by the policy of insurance. It will be noted that the parties did not have in mind such an unusual and absurd proposition of the vendee committing *theft, robbery* or *pilferage* against the owner who had voluntarily placed his property in the hands of the vendee. If the first portion of said paragraph may be said to be uncertain as to what the parties intended, the latter portion which excepts *wrongful conversion, embezzlement or secretion by a mortgagor or vendee in possession under mortgage, conditional sale or lease agreement,* would seem to be sufficient to remove any doubt as to the intent of the parties. ''The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.'' (Civ. Code, sec. 1641.) In arriving at the intention of the parties to said contract it must be kept in mind that they were engaged in drawing a policy of insurance guaranteeing protection against risks or perils to which the owners of automobiles are commonly subjected, to wit, *theft* committed as *theft* is ordinarily committed, and were not concerned with the purpose that the legislature had in mind in the framing of penal statutes for the prevention or punishment of crime. The question is, what did the parties have in mind and intend, and not what the legislature may have had in mind in adopting the policy of enlarging or extending common-law definitions of crime so as to include acts not formerly within the statute.

The complaint alleges that the party whom the owner of the automobile made its conditional vendee obtained possession of said automobile by falsely representing to the owner that he had on deposit with the National Bank of Kansas City, Missouri, $140, when, as a matter of fact, he had no such sum or any part thereof on deposit with said bank. The most that can be said of this transaction, as shown upon the face of the complaint, is that it constituted a very ordinary case of false representation, and it is so pleaded in the complaint. The complaint contains no statement of facts which would constitute larceny by trick or device. The transaction constitutes a simple case of obtain-

ing the possession of property by false representations, and neither party intended to nor had in mind any thought of covering any such risk or abuse of confidence which thereafter developed, by the policy of insurance.

The automobile was sold by its owner to a vendee selected by it upon a contract of sale and the insurance company cannot be required, in the light of the facts in this case, to assume the obligation of the vendee. We think there is nothing in *Buxton* v. *International Indemnity Co.*, 47 Cal. App. 583 [191 Pac. 84], which lays down a rule in conflict with our construction of the contract in the instant case. That was an action brought to reform a contract of insurance and to recover or enforce the same as revised and reformed. The decision was rested largely upon a letter which the agent of the insurance company wrote to the assured prior to the issuance of the policy as follows: "I wish to advise you that the International Indemnity Company will from this date extend policies on all cars in which you may have an equity to cover any claims arising under the following conditions: . . . Third: If the conditional buyer of an automobile or any member of his immediate family should steal any automobile insured under our policies and thereby commit a felony, upon warrant being secured for the arrest of such party or parties, the company hereby agrees that your equity in any automobile insured by this company will be fully protected." The above letter having been written prior to the issuance of the policy was held to constitute a part of the contract, and clearly, this being so, there was a waiver in that contract of the exceptions which are operative in the instant case. Placing ourselves in the position of the parties to the contract, we are satisfied that it was not the intention of the parties to insure against the risk or peril which is made the basis of this action. It is true that a contract of insurance must be construed most favorably to the assured. But this does not mean that a court must indulge in a strained and forced construction to harmonize incongruous elements, to the end that an obligation may be created against the insurer, when it is reasonably probable that the contracting parties did not contemplate such a result.

Numerous cases are cited by respondent as illustrative of the applicability of the word *theft* to the facts of the instant

case. While we are of the view that the contract excepts as a peril insured against the deprivation of the owner of his property parted with in the manner described in the complaint, it nevertheless may be stated in passing that the facts in said cited cases which are held to constitute larceny or theft are widely different from the facts pleaded in the instant case. For example, *People* v. *Shaughnessy,* 110 Cal. 598 [43 Pac. 2], was a case in which the prosecuting witness was tricked of his money in a lottery scheme, which is referred to in the opinion as a "bunco game." *People* v. *Rae,* 66 Cal. 423 [56 Am. Rep. 102, 6 Pac. 1], was a case of a conspiracy to obtain possession of property by the employing of the artifice commonly called the "confidence game." The case strongly relied upon by respondent, and which seems to form the basis of a number of other decisions cited, *Hill-Howard Motor Co.* v. *North River Ins. Co.,* 111 Kan. 225 [24 A. L. R. 736, 207 Pac. 205], was a false impersonation case. It will be found upon an examination of the authorities cited that most all of the cases upon which respondent relies are cases where property was obtained by trick or device or by the employment of artifice, or impersonating another, or cheating by the use of cards or mechanical devices, or by deceiving the senses of the person imposed upon by unfair means, or by conspiring with others to cheat, or by resorting to those sharp practice acts which are usually hurriedly pressed upon the unwary and commonly known as "swindling." The outstanding, well-considered decision directly and squarely combating respondent's theory is *Delafield* v. *London etc. Co.,* 177 App. Div. 477 [164 N. Y. Supp. 221]. It may be observed that a number of cases relied upon by the respondent are not in point. However, we do not deem it necessary to pursue this branch of the case further, as the decision is not rested upon the grounds last discussed.

In their brief and on oral argument counsel for appellant have stated that the only question involved in the appeal is whether a policy insuring against theft, robbery and pilferage insures against a larceny committed by means of trick and device. The attitude of counsel evidences a desire to have this question settled on this appeal and by the statement that it is the only question presented to compel its determination. However desirable that result might be, we

cannot be forced into that position in the face of the plain terms of the policy which remove that question from the case.

The contract of insurance forming a part of the complaint by special reference must be examined in order to determine whether a cause of action is stated therein. Upon so examining it, we are of the opinion that it does not state a cause of action and the demurrer should have been sustained.

The judgment is therefore reversed and the cause remanded to the superior court, with direction to sustain said demurrer.

Shenk, J., Langdon, J., Waste, C. J., Preston, J., Curtis, J., and Richards, J., concurred.