239 S.W.2d 538 (1951)
COX
v.
WORLD FIRE & MARINE INS. CO.
No. 28029.
St. Louis Court of Appeals, Missouri.
May 15, 1951.
Rehearing Denied June 13, 1951.
*539 Franklin E. Reagan, Adolph K. Schwartz and Sievers & Reagan, all of St. Louis, for appellant.
Milford T. English, St. Louis, for respondent.
WOLFE, Commissioner.
This is an appeal by the defendant in an action wherein the plaintiff was awarded a verdict and judgment for the value of an automobile insured by the defendant company against "theft" and "larceny". The loss arose by reason of a purported purchaser giving to the plaintiff a forged check, which was accepted as payment of the purchase price for the automobile. Upon receipt of the check the plaintiff gave the pretended purchaser the automobile in question and after discovering that the check was a forgery he sued to recover on the theft clause of his policy.
The evidence discloses that in May of 1948, Leonard B. Cox bought a new Pontiac automobile for $2,503 and that on November 18, 1948, he purchased a "Comprehensive" policy of insurance from the defendant covering loss of the car through "Theft (Broad Form) Loss of or damage to the automobile caused by theft, larceny, robbery or pilferage." The policy contained a clause excluding loss due to "conversion, embezzlement or secretion by any person in lawful possession of the automobile under a bailment, lease, conditional sale, mortgage or other encumbrance".
Early in 1949 Cox wanted to sell the automobile in order to purchase a later model of the same make so he advertised it for sale. In answer to the advertisement a man giving the name of Maguire called upon Cox in St. Louis to look at the car. Maguire, who said he lived in East St. Louis, agreed to purchase the automobile for $2,175. This agreement was reached on Sunday afternoon and Maguire told Cox that he would bring him a cashier's check, for the amount agreed upon, the next day. Cox heard no more from Maguire until the following Tuesday, when he received a phone call from him, at which time Maguire said that he had been ill but that if the car was still available he would send his brother-in-law over with a cashier's check and directed that the car be given to him. Shortly thereafter a man called upon Cox and presented to him what appeared to be a cashier's check on The Southern Illinois Bank of East St. Louis, Illinois, for $2,175, payable to Leonard B. Cox. Cox accepted the check and delivered to its bearer the automobile and his certificate of title signed in blank but not notarized.
That same evening Cox called on a Pontiac dealer in St. Louis and endorsed the check over to the dealer as payment on the purchase of a new car. Thursday of that week the dealer informed Cox that the check had been returned marked "Bogus". Cox at once informed the police and called the agent who had sold him the insurance policy. The car was traced to a dealer in Kansas City who had sold it, but its course of transfer beyond that was unknown.
Upon trial the defendant stood on its motion for a directed verdict, contending *540 that the taking of the automobile by Maguire in the manner described by the plaintiff did not constitute theft or larceny. It is urged here that the court erred in refusing to direct a verdict in accordance with the defendant's motion.
Since the exclusion clause of the policy applied only where the loss occurs through a person in possession under a bailment, lease, conditional sale, mortgage or other encumbrance, there can be, and there is, no contention that the insurer is relieved of liability under that clause. This leaves for determination the question of whether or not the words "theft" or "larceny" cover the loss sustained by the plaintiff.
In construing a contract of insurance its words must be given the ordinary meaning that they carry in common usage or as stated in Wendorff v. Missouri State Life Ins. Co., 318 Mo. 363, 1 S.W.2d 99, loc. cit. 101, 57 A.L.R. 615: "Plain and unambiguous language must be given its plain meaning. The contract should be construed as a whole; but, in so far as open to different constructions, that most favorable to the insured must be adopted." See Packard Mfg. Co. v. Indiana Lumbermens Mut. Ins. Co., 356 Mo. 687, 203 S.W. 2d 415, the case therein cited.
The word "theft" is defined in the Merriam-Webster New International Dictionary, Second Edition, as "Act of stealing; specif., the felonious taking and removing of personal property, with intent to deprive the rightful owner of it; larceny." It is defined in 3 Bouv. Law Dictionary, Rawles Third Edition, p. 3267, as "A popular term for larceny. It is a wider term than larceny and includes other forms of wrongful deprivation of property of another * * * Acts constituting embezzlement or swindling may be properly so called." The word is generally one of popular, rather than of legal, use, and it is held to embrace within its meaning, or to be equivalent to, the word "larceny". Royal Ins. Co. v. Jack, 113 Ohio St. 153, 148 N.E. 923, loc. cit. 924, 46 A.L.R. 529; Cedar Rapids Nat. Bank v. American Surety Co., 197 Iowa 878, 195 N.W. 253, loc. cit. 254; Illinois Automobile Ins. Exch. v. Southern Motor Sales Co., 207 Ala. 265, 92 So. 429, 24 A.L.R. 734. It should be noted, however, that larceny has been extended in many states to include such offenses as obtaining property by trick or device and even to the unauthorized use of a motor vehicle. In recognition of this divergence of meaning the Supreme Court of New York in Delafield v. London & Lancashire Fire Ins. Co., 177 App.Div. 477, 164 N.Y.S. 221, loc. cit. 223, stated: "The term `theft,' as used in this policy, does not include all forms of larceny recognized by law. It does not include a larceny perpetrated, as this was, under the form and guise of a business transaction conducted by the insured himself." Whatever differing refinements each of the words may convey is not decisive of this case, however, for both words are used.
The defendant asserts that since Maguire obtained the automobile from Cox by presenting to him a forged check, and since Cox not only gave possession of the car but did so with the intent to pass title, no larceny was committed.
The Revised Statutes of Missouri, 1949, § 560.155, provides: "Every person who shall be convicted of feloniously stealing, taking and carrying away any money, goods, rights in action, or other personal property, or valuable thing whatsoever of the value of thirty dollars or more, or any horse, mare, gelding, colt, filly, ass, mule, sheep, goat, hog or neat cattle, belonging to another, shall be deemed guilty of grand larceny; and dogs shall for all purposes of this chapter be considered personal property."
Construing that section with its prior enactments and following the cases of State v. Anderson, 186 Mo. 25, 84 S.W. 946, and State v. Buck, 186 Mo. 15, 84 S.W. 951, this court held in State v. Ewing, Mo. App., 270 S.W. 116, loc. cit. 117:
"The law is well settled in this state that, where the owner of property, through the influence of fraud, artifice, or trickery, delivers the possession of his property, without intending to part with the title thereto, and there is a preconceived design on the part of the taker of the property *541 to convert it to his own use when obtained, the offense in such case is larceny. The law is equally well settled that, where the owner of the property delivers it with the intention of parting with it altogether; that is, by giving the title as well as the possession, the offense is that of false pretenses, and not larceny."
It will be noted that all of these are criminal cases following the strict construction that has prevailed where a crime was charged. The courts of Missouri have never passed upon the precise question presented by this appeal, but we are cited to impressive authority from other states.
Royal Insurance Company v. Jack, 113 Ohio St. 153, 148 N.E. 923, 925, decided by the Supreme Court of Ohio, in 1925, held: "If there was no intention on the part of the owner to part with the possession and title of the car, if no sale was contemplated, but possession was secured from the owner by a trick, or with the intention of stealing it, the wrongdoer might be guilty of larceny. If, under the clause of the insurance contract, theft and larceny are synonymous, it must be conceded that, since there was no larceny, there was no theft. * * * the swindling of another by means of which title and possession to property are obtained from the owner is neither theft nor larceny."
The Iowa Supreme Court made a similar holding in Cedar Rapids National Bank v. American Surety Co., 197 Iowa 878, 195 N.W. 253, loc. cit. 255, wherein it stated: "if the owner of the property be induced by a fraudulent trick to loan it to the wrongdoer for temporary use and return, and if the wrongdoer so borrow the same with intent to appropriate to his own use, and does so appropriate the offense is larceny. On the other hand, if the owner be thus fraudulently induced to sell or trade his property and to part with it absolutely to the wrongdoer, the offense is that of obtaining property by false pretense."
A similar holding is to be found in Delafield v. London & Lancashire Fire Ins. Co., above cited, where the car of the insured was given to a party to sell and the party so entrusted sold the car and converted the money to his own use.
Pronouncements of like import may be found in Aetna Casualty & Surety Co. v. Salyers, 294 Ky. 826, 172 S.W.2d 635; Illinois Automobile Ins. Exch. v. Southern Motor Sales Co., 207 Ala. 265, 92 So. 429, 24 A.L.R. 734; and Fiske v. Niagara Fire Ins. Co., 207 Cal. 355, 278 P. 861.
The converse of these holdings are to be found, and the Supreme Court of Kansas holds: "The prevailing rule is that any scheme, whether involving false pretenses or other fraudulent trick or device, whereby an owner of property is swindled out of it with the preconceived intent of the swindler not to pay for it, is classed as larceny and is punished accordingly." Hill Howard Motor Co. v. North River Ins. Co., 111 Kan. 225, 207 P. 205, loc. cit. 206, 24 A.L.R. 736; Overland-Reno Co. v. International Indemnity Co., 111 Kan. 668, 208 P. 548.
The Supreme Court of Rhode Island reached the same conclusion in a case quite in point with the one under consideration, holding in Brady v. Norwich Union Fire Ins. Soc., 47 R. I. 416, 133 A. 799, loc. cit. 800: "Plaintiff's loss was caused by larceny. In legal and popular language, Carpenter could properly be called a thief; he got the automobile by fraud and took it away with intent to steal it. To construe the policy so as to allow a recovery, if plaintiff parted with possession only, and to deny recovery if he intended to part with both title and possession, in view of the abolition by statute of the distinction between the two crimes, we think would be a strained and unfair construction."
It is apparent that the cases favoring the construction urged by the defendant arise in states where, as in Missouri, the common-law definition of larceny prevails, or in states, as in New York, where the term larceny has been extended to embrace offenses other than those contemplated by common law, and the courts hold that such *542 larceny is not "theft" within the popular meaning of the word. In Van Vechten v. American Eagle Fire Ins. Co., 1925, 239 N. Y. 303, 146 N.E. 432, 433, 38 A.L.R. 1115.
It is difficult to say what meaning is embraced within the words as they are commonly used. As the larceny statutes in states are extended to embrace many types of crime including such as that committed here, people read and hear of convictions under such statutes and their conception of the words' meaning extends with their use. In forming their conception they do not resort to statutory definitions of crimes in the state where the policy is issued, but upon their own observation of how the words are used in common speech. We have concluded, however, that the common meaning of the words "theft" and "larceny" still carry with them some element of trespass and that neither were meant to apply where the owner gives the property to a malefactor with the intention of passing title.
In passing upon liability under a fidelity bond which agreed to indemnify against loss by acts of larceny or embezzlement, our Supreme Court stated in Farmers' Loan & Trust Co. v. Southern Surety Co., 285 Mo. 621, 226 S.W. 926, loc. cit. 931:
"The act complained of is the felonious taking and carrying away of the money in question. That there must, to constitute larceny, have been an actual taking is not denied; neither is it denied that there was such a taking of the money of the plaintiff from the Commerce Trust Company by Mr. Peltzer through the agency of the New England National Bank of Kansas City, and that Peltzer actually received it and converted it to his own use. The question is therefore whether this taking was, in contemplation of law, against the will of the plaintiff; for if the plaintiff gave its consent with the purpose that it should thereby become the property of Peltzer, absolutely and unconditionally, then no larceny could be predicated of the act. * * *
"In this state it has been settled that where both the possession and title to property has been obtained from the true owner by fraud and falsehood there is no larceny, because the crime is characterized by the terms of section 4565, supra [R.S.1949, § 561.370], as obtaining it by false pretenses".
In Fiske v. Niagara Fire Ins. Co., 207 Cal. 355, 278 P. 861, loc. cit. 862, the court, considering a similar set of facts, stated: "The transaction constitutes a simple case of obtaining the possession of property by false representations, and neither party intended to nor had in mind any thought of covering any such risk or abuse of confidence which thereafter developed, by the policy of insurance."
This appears to be the interpretation that we must adopt, for if we declare that the act here constituted theft under the terms of the policy we would be extending it to include any number of fraudulent transactions by which the insured might lose his automobile, when such coverage was not in the contemplation of the parties at the time the contract was entered into.
It follows that there was no submissible case made under the evidence. For this reason the other assignments of error raised need not be passed upon, and it is the recommendation of the Commissioner that the judgment be reversed.
PER CURIAM.
The foregoing opinion of WOLFE, C., is adopted as the opinion of the court.
The judgment of the circuit court is accordingly reversed.
ANDERSON, P. J., and McCULLEN and BENNICK, JJ., concur.