Bobby R. BOGGS, Appellant,

v.

MOTORS INSURANCE CORPORATION,
Appellee.

No. 2049.

Municipal Court of Appeals for the
District of Columbia.

Argued Oct. 28, 1957.

Decided March 17, 1958.

Cullen B. Jones, Jr., Washington, D. C., with whom W. Byron Sorrell, Gerard P. Fleischut, and Bernard J. Hammett, Washington, D. C., were on the brief, for appellant.

Charles E. Channing, Jr., Washington, D. C., with whom Hugh Lynch, Jr., Washington, D. C., was on the brief, for appellee. Edward J. Gorman, Jr., Washington, D. C., also entered an appearance for appellee.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

ROVER, Chief Judge.

The facts in this case closely parallel those in Great American Indemnity Com-

pany v. Yoder[1] recently decided by this court.

As in that case appellant advertised his car for sale in a Washington newspaper. He was thereafter approached by an individual using a fictitious name who, with the aid of an accomplice, entered into negotiations for the sale of the car. The price being acceptable to both parties, appellant removed his license plates, transferred his certificate of title and turned the car over to the purchaser. In return appellant accepted a check for the amount of the sale price, which was subsequently dishonored as having been drawn on a nonexistent account.

Suit was then brought against appellee insurance company on a policy by which it agreed, under the theft (broad form) provision, to pay appellant for loss or damage to the automobile caused by "theft, larceny, robbery or pilferage." Under the terms of the policy this coverage is not applicable "if the automobile is or at any time becomes subject to any bailment lease, conditional sale, purchase agreement, mortgage or other encumbrance" or where the loss is "due to conversion, embezzlement or secretion by any person in possession of the automobile" under any of the conditions in the previously mentioned exclusion clause. Cross-motions for summary judgment were filed, and after oral argument judgment was entered for appellant. On appellee's motion judgment was set aside with appellant's consent pending our decision in the Great American case in the belief that that case would be dispositive of the issues here involved. On the basis of our holding in Great American the court entered judgment for the appellee.

In raising the issue as to whether a loss under these circumstances is one for which the insurance company agreed to indemnify appellant, the same question as was presented in Great American is before us in this appeal. Appellant's chief attempt to distinguish the two cases lies in his contention that the insurance contract in the present instance is a Virginia contract and that a different result would be reached if the law of that jurisdiction governs the construction of the policy. He points out that although the policy was written in and issued from the District of Columbia where premiums were paid, the contract was delivered in Virginia and was intended to protect property owned and maintained in that State by a Virginia resident. We do not believe it necessary to determine which law should govern the construction of the contract as we think the same result is reached under the existing state of law in either jurisdiction.

In Great American Indemnity Company v. Yoder, supra, where the loss occurred under identical circumstances, this court held that words in an insurance contract, unless obviously used in a technical sense, are to be given their commonly accepted meaning. In concluding that the word "theft" as used in the comprehensive coverage clause of the policy did not embrace a taking by false pretense, we stated:

> " * * * We think the popular definition of 'theft' carries the import of a trespass and is not applicable where one intends to voluntarily transfer not merely possession but title to the property."[2]

While in the present case appellant rests his claim on the theft (broad form) provision which protects against loss due to *theft,* larceny, robbery, or pilferage, the distinction is without significance. The construction of the same word is in issue; moreover, the principles laid down in Great American have had equal application in cases where recovery has been sought on

1. D.C.Mun.App., 131 A.2d 401, 402, petition for allowance of appeal denied by the United States Court of Appeals July 1, 1957.

2. Id. at page 403.

the basis of this clause or similar provisions in a policy.[3]

The Great American case was not decided on this basis alone, for the obligations of the parties to an insurance contract must be determined by the protection clauses together with the provisions excepting coverage. The policy here excludes theft coverage "if the automobile is or at any time becomes subject to any bailment lease, conditional sale, *purchase agreement,* mortgage or other encumbrance" (emphasis supplied) or where the loss is due to conversion, embezzlement, or secretion by any person in possession of the automobile under the previously mentioned conditions. In referring to the above provisions, which were the same in Great American, we stated that these clauses restricted rather than extended the meaning of the term "theft." A reading of the conditions enumerated in the exclusion clauses seems to indicate clearly that it was the intention of the parties to exclude insurance coverage where an owner transferred some interest in the automobile other than mere custody to another. A loss of the vehicle under these conditions would not be within the risk contemplated in the policy.

There can be little doubt that the insured intended to transfer his interest in the automobile to the "vendee" or that the vehicle became subject to a *purchase agreement.* Corbin, in his treatise on contracts, states the term "agreement" means only a transaction between two people which ordinarily leads to a contract. This concord or union of minds may be lawful or unlawful, with consideration or without.[4] The parties here held several meetings to negotiate the transaction, and immediately following appellant's oral agreement to sell and the "vendee's" oral agreement to purchase,

title was voluntarily assigned and possession transferred. The language of the exclusionary clause is plain, and we are of the opinion that the theft coverage is not applicable when the automobile is obtained through the fraud of a vendee once the vehicle is subject to a sales agreement. It is true that a contract of insurance must be construed most favorably to the insured, but this does not mean that courts should indulge in forced constructions to create an obligation against the insurer when it is reasonably probable the parties did not contemplate such a result. Assuming the law of the District governs, the Great American case is therefore decisive of the issues here involved.

In contending that a different conclusion would result under the law of Virginia, appellant points out that under the penal statutes of that State anyone obtaining property by false pretense is deemed guilty of larceny.[5] He therefore concludes that since the theft coverage in the policy specifically provides for loss by larceny, the insurer is obligated under its contract. We are unable to find Virginia cases supporting this proposition and appellant has cited none. In the absence of rulings from Virginia's highest court, we may look to the decisions of this and other jurisdictions to determine the question.

Appellant's contention has found acceptance in two jurisdictions; however, to our knowledge these are the only two courts which have determined the meanings of words in an insurance contract *solely* on the basis of their criminal definitions.[6] By overwhelming authority the decisions of courts both supporting and contradicting the conclusion in Great American have held the meaning of common speech and under-

---

3. Thompson v. Connecticut Fire Ins. Co., 203 Okl. 530, 223 P.2d 757; see annotation, 48 A.L.R.2d 8, 64–65.

4. 1 Corbin, Contracts § 9 (1950).

5. Code of Virginia 1950, § 18–180.

6. Central Surety Fire Corporation v. Williams, 213 Ark. 600, 211 S.W.2d 891; Brady v. Norwich Union Fire Ins. Soc., 47 R.I. 416, 133 A. 799.

standing to be controlling.[7] However, assuming *arguendo* that the definition of "larceny" in a criminal statute is the equivalent of "larceny" as used in the insurance contract, the question still remains as to whether the exclusionary clauses preclude recovery. We think that our ruling stated previously in this opinion on that issue and our holding in Great American are dispositive of the question.

Affirmed.

7. Fiske v. Niagara Fire Ins. Co., 207 Cal. 355, 278 P. 861; Granger v. New Jersey Ins. Co., 108 Cal.App. 290, 291 P. 698; Hill-Howard Motor Co. v. North River Ins. Co., 111 Kan. 225, 207 P. 205, 24 A.L.R. 736; Cox v. World Fire & Marine Ins. Co., Mo.App. 239 S.W.2d 538; Van Vechten v. American Eagle Fire Ins. Co., 239 N.Y. 303, 146 N.E. 432, 38 A.L.R. 1115; Royal Ins. Co. v. Jack, 113 Ohio St. 153, 148 N.E. 923, 46 A.L.R. 529.